**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Deroy SHOMO, Defendant-Appellant.**

No. 84–1460.

United States Court of Appeals,
Tenth Circuit.

March 14, 1986.

Julian K. Fite (Betty Outhier Williams, on briefs) of Robinson, Locke, Gage, Fite & Williams, Muskogee, Okl., for defendant-appellant.

Roger Hilfiger, U.S. Atty. and Lynda C. Burris, Asst. U.S. Atty. (Donn F. Baker, former U.S. Atty. and Roberta M. Klosiewicz, Asst. U.S. Atty., on brief), E.D. Okl., Muskogee, Okl., for plaintiff-appellee.

Before McKAY and SETH, Circuit Judges, and GREENE, District Judge.*

McKAY, Circuit Judge.

Deroy Shomo appeals his conviction of knowingly possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C.App. § 1202(a) (1982). He contends that the district court erred in denying his motion to suppress evidence obtained during a search of his residence. Appellant also maintains that the district court abused its discretion in allowing the

government to present evidence showing that appellant had possessed several firearms other than the .38 caliber revolver charged in the indictment.

On September 9, 1983, a Special Agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF) submitted an affidavit for a search warrant to a United States Magistrate, requesting a warrant to search appellant's residence for a .38 caliber revolver. The affidavit recited that a named informant had observed appellant leave his residence approximately ten days earlier carrying a pistol in his pocket. In addition, the affidavit stated that another named informant had told an Assistant United States Attorney that, approximately ten days earlier, appellant had left his residence and walked across the street where he threatened the informant with a .38 caliber revolver. The affidavit also established that appellant had been previously convicted of bank robbery.

The magistrate issued the search warrant, and later that same day two ATF agents went to appellant's residence accompanied by the county sheriff and several deputies. When they arrived, appellant met them on the front porch. An ATF agent handed the search warrant to appellant, who called to his wife to "get the gun." Record, vol. 2, at 41. The ATF agent then followed appellant's wife into the kitchen. She opened one of the kitchen cabinets, and the agent removed a .38 caliber revolver and some ammunition. Appellant then told the ATF agents that there were two more guns in the bedroom—a shotgun and a .22 caliber rifle. One of the agents went to the bedroom and seized both of those weapons. In the meantime, the county sheriff had found some .22 caliber and .30–30 caliber ammunition in the house. Appellant told the sheriff that the .30–30 ammunition was for a .30–30 rifle that a game ranger earlier had confiscated from him and which was being stored

* Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation.

at the sheriff's office. Thereafter, a federal grand jury indicted appellant for possessing a .38 caliber revolver after having been convicted of a felony, in violation of 18 U.S.C.App. § 1202(a) (1982).

## I.

Appellant raises two issues with regard to the sufficiency of the information contained in the affidavit for the search warrant. First, he contends that the information is too stale to establish probable cause. Second, he contends that the information does not establish probable cause to believe that the .38 caliber revolver would be located in appellant's residence.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court abandoned the two-pronged *Aguilar-Spinelli* test for determining whether information provided by an informant is sufficient to establish probable cause. In its place, the Court reaffirmed the totality of the circumstances analysis that has been traditionally used to determine probable cause. Thus, under *Gates,*

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States,* [362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960) ].

462 U.S. at 238–39, 103 S.Ct. at 2332. In keeping with the Fourth Amendment's strong preference for warrants, we are more likely to affirm a law enforcement officer's determination of probable cause when it is backed by the authority of a search warrant. *See Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 2089, 80 L.Ed.2d 721 (1984) (per curiam) (resolution of probable cause issue in doubtful or marginal cases should be largely determined by preference for warrants) (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)); *United States v. Watson,* 423 U.S. 411, 423, 96 S.Ct. 820, 827, 46 L.Ed.2d 598 (1976) (courts more readily accept law officer's determination of probable cause when backed by warrant); *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965) (evidence sufficient for magistrate's determination of probable cause often insufficient to justify warrantless search); *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964) (reviewing courts accept lesser quantum of evidence to affirm magistrate's finding of probable cause than is required for field officer's unreviewed determination); *United States v. Doty,* 714 F.2d 761, 763 (8th Cir.1983); *United States v. $22,287, United States Currency,* 709 F.2d 442, 447 (6th Cir.1983); *United States v. Bentley,* 706 F.2d 1498, 1504 (8th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984); *cf. United States v. Impink,* 728 F.2d 1228, 1232 (9th Cir.1984) (courts disfavor contention that probable cause existed when case marginal and police had ample opportunity to obtain warrant in advance). *But see United States v. Reed,* 733 F.2d 492, 502 n. 4 (8th Cir.1984) (no binding-authority for proposition that warrantless searches and arrests require higher showing of probable cause than those conducted with warrants). This deferential standard of review reflects our desire to encourage law enforcement officers to seek a warrant from a judicial officer, whenever possible, before conducting a search. *Illinois v. Gates,* 462 U.S. at 237 n. 10, 103 S.Ct. at 2331 n. 10.

■ Appellant correctly observes that probable cause to search cannot be based on stale information that no longer suggests that the item sought will be found in the place to be searched. *United States v. Haimowitz,* 706 F.2d 1549, 1554–55 (11th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). While it

is true that the timeliness of the information contained in the affidavit is an important variable, probable cause is not determined simply by counting the number of days between the facts relied on and the issuance of the warrant. *United States v. Rahn*, 511 F.2d 290, 292 (10th Cir.1975). Rather, whether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized. *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972); *United States v. Foster*, 711 F.2d 871, 878 (9th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). Thus, where the property sought is likely to remain in one place for a long time, probable cause may be found even though there was a substantial delay between the occurrence of the event relied on and the issuance of the warrant. *United States v. Rahn*, 511 F.2d at 292–94; *United States v. McManus*, 719 F.2d 1395, 1401 (6th Cir. 1983); *United States v. Steeves*, 525 F.2d 33 (8th Cir.1975). By the same token, where the affidavit recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less critical. *United States v. Johnson, supra*, at 287; *United States v. Landis*, 726 F.2d 540, 542 (9th Cir.), *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984).

■ Applying these principles to the facts of this case, we conclude that the ten-day period between the time appellant was seen carrying a revolver and the issuance of the warrant was not so long that the information contained in the affidavit had become stale. Although the criminal activity alleged in the affidavit was not of a continuous and ongoing nature, the nature of the property to be seized and the place to be searched make the ten-day delay inconsequential. In *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir.1975), we quoted with approval then Chief Judge Arraj's statement that "[i]t is reasonable to assume that [appellant's] house was where he kept things and it is pretty normal I believe for individuals to keep weapons in their homes, particularly hunting weapons and

weapons which may be kept for the safety of the family." We adhere to this view and conclude that it was reasonable for the magistrate to conclude that the revolver would still be located in appellant's house. *See also United States v. Steeves*, 525 F.2d 33, 38 (8th Cir.1975), ("people who own pistols generally keep them at home or on their persons").

■ Appellant's second attack on the sufficiency of the affidavit is closely related to the first. He argues that even if the information in the affidavit is not stale, the affidavit does not contain any information establishing that the .38 caliber revolver would be found in appellant's residence. Although the affidavit does not state that anyone actually observed the revolver in appellant's home, it does establish that appellant was seen leaving his residence with the revolver in his possession. Although appellant might have kept the revolver someplace other than in his home, there was at least a reasonable probability that he would keep it there. The magistrate was not required to rule out every other possible alternative. In the circumstances presented, the information set forth in the affidavit provided a substantial basis for the magistrate's finding of probable cause.

## II.

Appellant next contends that the district court abused its discretion in allowing several government witnesses to testify about appellant's possession of firearms other than the .38 caliber revolver charged in the indictment. Prior to trial, appellant filed a motion in limine to prohibit the government from introducing such evidence. On the morning of trial, the prosecutor told the court that the government intended to introduce evidence showing that appellant had been arrested while in possession of a .30–30 rifle and that an ATF agent had subsequently informed appellant that it was unlawful for him to possess a firearm. When the court questioned the relevancy of such evidence, the prosecutor told the court that the evidence was "relevant to show

[appellant's] knowledge that he was not to be in possession of a firearm." Record, vol. 2, at 17. The court denied appellant's motion in limine and, over defense counsel's objection, permitted the two ATF agents and the county sheriff who searched appellant's residence to testify that, during the search, they had found a rifle, a shotgun, and .22 caliber and .30–30 caliber ammunition. A state game ranger was also allowed to testify that he had confiscated a .30–30 rifle from appellant in November 1982. An ATF agent then testified that, after appellant's .30–30 rifle was seized in November 1982, he had informed appellant that it was unlawful for him to possess a firearm.

"Relevant evidence," as defined by the Federal Rules of Evidence, means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Relevant evidence is admissible unless it is specifically excluded by another rule of evidence. Fed.R.Evid. 402. Although the Federal Rules of Evidence do not define relevancy in terms of materiality, the concept of materiality is embodied in Rule 401 insofar as relevancy is defined as a relationship between certain evidence and a "fact that is of consequence to the determination of the action." Thus, although evidence may tend to make the existence of a fact more probable or less probable than it would be without the evidence, the evidence is not relevant unless the fact to be proved or disproved is material. Whether a fact is material is determined by the substantive law which governs the action. *Cf. Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1369–70 (10th Cir. 1982).

As noted above, the government's position at trial was that the evidence concerning appellant's possession of the .30–30 rifle was relevant to show that appellant knew it was unlawful for him to possess a firearm. If specific intent were an element of the government's case under 18 U.S.C. App. § 1202(a) (1982), this evidence might have had some probative value. However, it is well settled that, in a prosecution brought under 18 U.S.C.App. § 1202(a) (1982), the government is not required to establish specific intent. In *United States v. Laymon*, 621 F.2d 1051, 1054 (10th Cir. 1980), this court held that the only intent the government is required to prove is that the defendant knew that the instrument he possessed was a firearm.

On appeal, the government abandons the position that it took at trial. Apparently having realized that specific intent is not an element of the offense, the government now argues that appellant's possession of other firearms was relevant because it established that appellant knew that the .38 caliber revolver was a firearm. We are not persuaded by the government's last-ditch effort to establish a basis for admissibility of evidence that was clearly intended to prejudice appellant in the eyes of the jury. Common sense and logic tell us that appellant's possession of a rifle and a shotgun does nothing to establish that he knew the .38 caliber revolver was a firearm. Nor does his possession of the ammunition establish such knowledge, in view of the fact that the ammunition was not compatible with the .38 caliber revolver.

Although the trial court has broad discretion in determining whether evidence meets the threshold requirement of relevancy, *Averitt v. Southland Motor Inn of Oklahoma*, 720 F.2d 1178, 1181 (10th Cir.1983), we conclude that the testimony concerning the other firearms should not have been received in evidence. Indeed, its exclusion was mandated by Rule 404(b) of the Federal Rules of Evidence, which provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The First Circuit explained the rationale underlying Rule 404(b):

> This rule codifies the common law doctrine forbidding the prosecution from asking the jury to infer from the fact that the defendant has committed a bad act in the past, that he has a bad character and therefore is more likely to have committed the bad act now charged. Although this "propensity evidence" is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance. 2 Weinstein's evidence ¶ 404[04] at 404–26 (1980); *Note Procedural Protections of the Criminal Defendant—A Re-evaluation of the Privilege Against Self-Incrimination and the Rule Excluding Evidence of Propensity to Commit Crimes,* 78 Harv.L.Rev. 426, 436 (1964). Where the evidence has some "special" probative value, however,—where, for example, it is relevant to something other than mere "character" or "propensity,"—it *"may"* be admitted. The trial judge then must weigh the special relevance against the prejudicial risk, taking into account the likely hostile jury reaction that underlies the common law rule. *United States v. Halper,* 590 F.2d 422, 432 (2d Cir.1978); 2 *Weinstein's Evidence* §§ 404[08], 404[18]. *See also United States v. Byrd,* 352 F.2d 570, 574–75 (2d Cir.1965) (Friendly, J.).

*United States v. Moccia,* 681 F.2d 61, 63 (1st Cir.1982).

It appears from the record that the government tried this case on the theory of "Give a dog an ill name and hang him." *Olinger v. Commissioner of Internal Revenue,* 234 F.2d 823, 824 (5th Cir.1956). As a result, appellant was subjected to exactly the kind of extreme and unfair prejudice that Rule 404(b) was intended to prevent. In a case where there was so much evidence of guilt, it is difficult to understand why the government prosecutor thought it was necessary to extend the trial for the sole purpose of putting on evidence that had nothing to do with the crime charged. But given the repeated references to the other firearms, we cannot say that the error was harmless beyond a reasonable doubt. Accordingly, appellant's conviction is reversed and remanded for a new trial.

REVERSED AND REMANDED.