UNITED STATES of America, Plaintiff–Appellee,

v.

Patricia WILLIAMS a/k/a Candy, Defendant–Appellant.

No. 88–2907.

United States Court of Appeals, Tenth Circuit.

March 5, 1990.

Tyrone D. Reed, Cleveland, Ohio, for defendant-appellant.

D. Blair Watson, Asst. U.S. Atty. (Robert E. Mydans, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before SEYMOUR, ANDERSON, Circuit Judges, and KANE, District Judge.*

STEPHEN H. ANDERSON, Circuit Judge.

Appellant, Patricia Williams, was convicted after a jury trial of one count each of engaging in racketeering activities and conspiracy to participate in such activities in violation of 18 U.S.C. §§ 1961, 1962(c) and (d); one count of conspiracy to distribute heroin; two counts of interstate travel to facilitate the conspiracy; and three counts of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, 18 U.S.C. § 1952(a)(3), and 18 U.S.C. § 2. Williams was tried together with Donald Rogers, a coconspirator named in the indictment with Williams and other conspirators. The district court sentenced Williams to concurrent prison terms of 360 months for the four most serious counts, the minimum term according to the appropriate range for those offenses under the sentencing guidelines.[1] These terms were to be served concurrently with terms of 240 months each on two lesser counts and 60 months each on the remaining two counts. Following the prison terms, the court sentenced Williams to concurrent terms of supervised release of five years each for six counts, three years each for the remaining two.

On appeal, Williams contends that the trial court committed several errors which warrant reversal of the guilty verdict or vacation of the sentence imposed. She contends that the trial court erred by (1) denying her motion to transfer venue, (2) denying her motion for severance, (3) refusing to suppress evidence gathered during a search based on an allegedly invalid search warrant, (4) determining her sentence by application of the sentencing guidelines, (5) increasing her sentence under the guidelines for her role as a "leader or organizer" of the conspiracy and for obstructing justice, and (6) calculating the base offense level under the guidelines based on the total quantity of drugs known to Williams to be involved in the conspiracy. We conclude that each of these arguments is meritless as detailed below.

## I. VENUE

■ Williams first contends that the district court should have granted her motion to transfer venue from Oklahoma, where the trial was held, to California, where she resided. This court has stated that "[C]hange of venue in a criminal case is discretionary, and a trial judge's decision on the matter is entitled to deference." *United States v. Hunter*, 672 F.2d 815, 816 (10th Cir.1982) (citing *United States v. Jobe*, 487 F.2d 268, 269–70 (10th Cir.1973), *cert. denied*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974)); *see United States v. Calabrese*, 645 F.2d 1379, 1384 (10th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981) and 454 U.S. 831, 102

---

* Honorable John L. Kane, Jr., Senior Judge, U.S. District Court for the District of Colorado, sitting by designation.

1. United States Sentencing Commission, *Guidelines Manual* §§ 1B1.1–7A1.4 (Nov. 1989) [hereinafter U.S.S.G.].

S.Ct. 127, 70 L.Ed.2d 108 (1981). Even if sufficient reasons exist so that the trial court would have been justified in granting a motion to change venue, we will not reverse the lower court's decision unless the circumstances surrounding the trial compel it. *See United States v. Calabrese,* 645 F.2d at 1384.

■ The proper venue for criminal actions is normally "in [the] district in which the offense was committed." Fed.R. Crim.P. 18. A court may transfer a proceeding to another district, upon motion, "[f]or the convenience of parties and witnesses, and in the interest of justice." Fed.R.Crim.P. 21(b). In this case, the district court was justified in keeping the trial in Oklahoma. Most of the principal witnesses who appeared against Williams resided in or were located in Oklahoma. Williams supplied drugs to individuals located in Oklahoma and she participated in an ongoing conspiracy to distribute those drugs in Oklahoma. The conspiracy in which she was involved included a large heroin distribution organization employing a number of people operating out of Oklahoma City, Oklahoma. *See United States v. Ware,* 897 F.2d 1538 (10th Cir.1990). Oklahoma was therefore the "location of events likely to be in issue," as well as "the location of documents and records likely to be involved." *Platt v. Minnesota Mining & Mfg. Co.,* 376 U.S. 240, 244, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964).

Williams contends that several "character witnesses" were unable to testify on her behalf because of the trial location, and that the location was far from her residence and place of business. These facts alone do not compel a change in venue; the countervailing considerations listed above outweigh Williams' claim that some minor witnesses may have been inhibited from appearing solely by virtue of the trial location. The trial court did not abuse its discretion in denying the motion for change of venue.

## II. SEVERANCE

■ Williams was tried with a coconspirator, Rogers, with whom she had been charged jointly under Fed.R.Crim.P. 8. "[D]efendants charged jointly under [that rule] 'are not entitled to separate trials as a matter of right.'" *United States v. Cardall,* 885 F.2d 656, 667 (10th Cir.1989) (quoting *Bailey v. United States,* 410 F.2d 1209, 1213 (10th Cir.), *cert. denied,* 369 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969)). Where joinder is otherwise proper, a trial court may grant severance if it appears that the defendants will be prejudiced by a joint trial. Fed.R.Crim.P. 14; *see United States v. Calabrese,* 645 F.2d at 1384–85. The trial court's decision to deny a motion for severance will not be disturbed on appeal absent an affirmative showing of an abuse of discretion. *United States v. Hack,* 782 F.2d 862, 870 (10th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986). "To establish abuse of discretion more is required than that separate trials might have offered a better chance for acquittal of one or more of the accused." *United States v. Knowles,* 572 F.2d 267, 270 (10th Cir.1978).

■ Applying these standards, Williams has failed to show any specific prejudice to warrant reversal of the trial court's decision. Williams' only claim of prejudice resulting from the joint trial is that evidence adduced at trial against her codefendant did not relate to her involvement in the conspiracy and that such evidence of the codefendant's involvement prejudiced her own case. Specifically, she contends that she was prejudiced by the admission of the following evidence against Rogers, her codefendant: $5,000 taken from beneath the seat of Rogers' car; the apparent smell of drugs under that same automobile seat to which police dogs alerted at the time of Rogers' arrest; and wire tap evidence strongly implicating Rogers in the conspiracy. At most, Williams' claim amounts to an allegation that this evidence "'spilled over,' impairing [her own] chances for acquittal. Under our precedent, severance is clearly not warranted on this basis." *United States v. Cardall,* 885 F.2d at 668.

The district court instructed the jury during the course of the trial that evidence

admitted against one defendant was only relevant to that defendant. The court's final jury instruction stated:

"Throughout the trial, I have instructed you that certain evidence may be considered by you only with regard to a particular defendant or a particular issue in the case. I advise you that these instructions have been given to you in order to inform you of the legal limitations placed on the use of the evidence."

R.Supp. Vol. II, Tab 520, Instruction 15. We conclude that the court properly instructed the jury and that the jury considered only that evidence which it properly could in reaching its verdict against Williams. *See United States v. Cardall*, 885 F.2d at 668 ("The assumption that juries can and will follow the instructions they are given is fundamental to our system of justice.") (citing *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979) (plurality opinion)). Williams was not prejudiced by the joint trial; there was no error in the district court's denial of her motion for severance.

### III. ADMISSIBILITY OF SEIZED EVIDENCE

At trial, Williams sought to suppress evidence which was gathered during a search of her home, including a telephone book containing the names and telephone numbers of various participants in the conspiracy. Although the search was conducted pursuant to a search warrant, Williams claims that the district court erred in admitting the evidence over her objection because the information in the affidavit supporting the warrant was insufficient to constitute probable cause for the search and was impermissibly stale. Also, Williams claims that the warrant was overly broad and failed adequately to limit the items which it authorized to be seized.

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court recognized an exception to the exclusionary rule in cases where a peace officer conducts a search "in objectively reasonable reliance on a subsequent-

ly invalidated search warrant...." *Id.* at 922, 104 S.Ct. at 3420. Because the admissibility of the seized evidence ultimately depends on the application of the principles developed in the *Leon* decision, we need not decide whether the magistrate should have issued the warrant. *See United States v. Medlin*, 798 F.2d 407, 409 (10th Cir.1986) (Where "an appellate court, after careful reflection, would be hard pressed to determine whether probable cause existed ... the good-faith principles established in *Leon* come into play directly.") (citation omitted). Williams does not claim that the affidavit supporting the warrant was in any way false or fraudulent, nor does she assert that the magistrate failed to act impartially. Rather, she contends that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975) (Powell, J., concurring)).

■ The affidavit supporting the search warrant recites numerous facts which tend to show that Williams actively supplied heroin to an organization which imported and distributed illegal drugs. It describes interviews with three named participants in the drug distribution conspiracy who expressly claimed that Williams and her deceased husband acted as suppliers for the organization. It lists telephone company records showing that Williams subscribed to at least one telephone number used by the drug ring to obtain heroin. The affidavit also contains information received from a detective with the Inglewood Police Department that Williams' Inglewood business address had been identified in police reports as the location of ongoing drug sales.

Based on the above information, the magistrate concluded that sufficient probable cause existed to believe that evidence linking Williams to the ongoing criminal conspiracy would likely be present in her home.[2] The officers conducting the search were entitled to rely, in good faith, on the

---

**2.** Williams also complains that the affidavit con-

tained no information specifically linking her

magistrate's determination that these facts were sufficient to make out probable cause. *See United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir.1985) ("When we consider whether the officer relied in good faith upon a warrant, we must look to the underlying documents to see whether they are *devoid* of factual support. . . . It is only when the [officers'] reliance was wholly unwarranted that good faith is absent.").

■ Williams claims that the information contained in the affidavit had become stale by April 1988, when the warrant was issued, and that consequently, no reliance reasonably could be placed thereon. We disagree. Although some of the phone and business records linking Williams to the continuing criminal conspiracy dated back to 1984, the affidavit was not based entirely on such dated information. More importantly, the affidavit linked Williams to an ongoing conspiracy spanning a number of years. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Where, as here, the affidavit "recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less critical." *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir.1986) (citing *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972); *United States v. Landis*, 726 F.2d 540, 542 (9th Cir.), *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984)); *see, e.g., United States v. Reyes*, 798 F.2d 380, 382 (10th Cir.1986).

"[W]hether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *United States v. Shomo*, 786 F.2d at 984. In this case, the operation of the alleged drug ring was such that telephone, business, financial, and other records were likely to be kept which would link Williams to the conspiracy.

home to any of the drug violations. Our holding in *United States v. Reyes* disposes entirely of this argument:

"The affidavit did indicate that participants in the conspiracy maintained records regarding their activities. It is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit

These records, together with the fruits and instrumentalities of such an extensive criminal enterprise are likely to be present for some time. Thus a sufficient likelihood continued to exist that evidence relating to the ongoing conspiracy would be found in Williams' home. Under the totality of these circumstances the information upon which probable cause was based was not so impermissibly stale as to render the officers' reliance on the magistrate's search warrant unreasonable.

■ Finally, Williams challenges the warrant because it authorized seizure of a wide range of items likely to be present in her home. The warrant specifically identified and described each item which was authorized to be seized as evidence, instrumentality, or fruit of criminal activity. Given the extensive nature of the conspiracy, and considering the number of years over which Williams had been involved in the drug trafficking activity, we conclude that the scope of the warrant was justified by the breadth of the enterprise in which the magistrate had probable cause to believe Williams participated. *See United States v. Medlin*, 798 F.2d at 410 ("breadth of a warrant must be justified by the breadth of the probable cause") (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 408 (10th Cir.1985) (Logan, J., concurring)). Accordingly, the search conducted in reasonable reliance on the search warrant was carried out in good faith; the evidence obtained from the search was properly admitted.

## IV. SENTENCING GUIDELINES

■ Williams argues that according to the evidence at trial her personal involvement in the conspiracy did not extend beyond January 1987, well before the November 1, 1987 effective date of the sentencing guidelines; therefore, she contends that the trial court should not have applied the guidelines in sentencing her. Although the

need not contain personal observations that a defendant did keep such evidence at his residence."

798 F.2d at 382 (citing *Anthony v. United States*, 667 F.2d 870 (10th Cir.1981), *cert. denied*, 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982)).

trial court did find that "the last conspiratorial act shown to have affected her personally occurred in January 1987," the court also concluded that "the conspiratorial conduct for which she was responsible as a co-conspirator extended into December 1987." R.Vol. V at 48. Williams makes no objection to the factual determination that the conspiracy continued until ·December 1987; rather, she argues that the acts of coconspirators should not render her subject to the guidelines.

Williams' involvement in the conspiracy continued until December 1987, irrespective of the date of the last transaction which included her directly. Absent any affirmative withdrawal, she remained part of the ongoing criminal enterprise. *See United States v. Record*, 873 F.2d 1363, 1368 (10th Cir.1989) (citing *United States v. Brewer*, 630 F.2d 795, 800 (10th Cir.1980) (individual participant in initial drug deal remained part of continuing conspiracy despite being excluded from future dealings by coconspirators.)). Williams does not now contest the district court's factual finding that she made no effort to withdraw from or to stop the drug operation, despite her knowledge that her actions were part of a "larger ongoing conspiracy." *United States v. Record*, 873 F.2d at 1368 (quoting *United States v. Brewer*, 630 F.2d at 800) (fact that some participants joined or left the scheme irrelevant if each knew of the larger conspiracy); *United States v. Watford*, 894 F.2d 665 (4th Cir.1990) (Burden is on defendant to show Guidelines should not apply because he withdrew from conspiracy before Nov. 1, 1987.).

The sentencing guidelines apply only to offenses committed after November 1, 1987. Because Williams continued to be involved as a conspirator until December 1987, her offense was committed after the November 1, 1987 effective date of the sentencing guidelines; the trial court properly applied the guidelines to her sentence. *See, e.g., United States v. White*, 869 F.2d 822, 826 (5th Cir.) (Defendant's "conspiracy offense continued well after November 1, 1987, and thus was an offense committed after the effective date."), *cert. denied*, — U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989).

## V. FACTUAL DETERMINATIONS IN SENTENCING

Finally, Williams disagrees with the district court's factual findings that she was an "organizer or leader" of the conspiracy, U.S.S.G. § 3B1.1(a), and that she obstructed justice by misleading a pretrial services officer during an interview by providing false information concerning her prior arrests, U.S.S.G. § 3C1.1. Williams also objects to the court's determination of her base offense level under the sentencing guidelines by referencing the total quantity of drugs involved in the conspiracy rather than the much smaller quantity with which she personally dealt. Each of these contentions lacks merit.

We will defer to the district court's factual finding that Williams was an "organizer" unless that determination is clearly erroneous. *See United States v. Beaulieu*, 893 F.2d 1177 at 1181 (10th Cir.1990). Having reviewed the record, we cannot conclude that the district court clearly erred in finding that Williams' cooperation with and involvement in the ongoing conspiracy over a period of at least nine years made her an "organizer or leader" for purposes of the guidelines.

Williams next objects to the increase in the base offense level by 2 levels for obstruction of justice. The district court found that she obstructed justice by providing false information concerning prior arrests during an interview in connection with pretrial services. Williams argues that she had no duty to disclose her prior arrest because that arrest eventually led to a conviction which was later overturned by the state supreme court. This argument misconstrues the district court's findings. The court did not base the finding on any failure to provide information; rather, the court clearly stated:

"My opinion is that during the interview ... Williams[ ] had no obligation to volunteer information about her prior arrests, she could remain silent, but she could not supply false information, which she did. And that supplying the false information concerning the lack of arrests is not justified by the reversal of one conviction that followed after one of

those arrests. The enhancement for obstruction of justice is appropriate...." R.Vol. V at 52–53.

Williams also contends that she did not *lie* during the pretrial interview; that the question which prompted her to offer information concerning prior arrests was ambiguous and did not specifically define whether an arrest prior to a conviction should be disclosed. The sentencing judge did not find, and we need not conclude, that Williams lied in response to a direct question. The proper inquiry is whether Williams provided false information to mislead the interviewer. The commentary to § 3C1.1 provides that the increase for obstruction of justice is intended to provide "a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding." U.S.S.G. § 3C1.1, comment. The guideline lists as examples of such conduct the furnishing of false statements to the probation office or sentencing judge. U.S.S.G. § 3C1.1, comment. (n. 1(c), (e)). The court's determination that Williams obstructed justice by misleading the pretrial services officer is subject only to review for clear error. *See United States v. Franco–Torres*, 869 F.2d 797, 800 (5th Cir.1989). Having reviewed the record, we conclude that the increase for obstruction was not clearly erroneous.

Williams' final objection to the sentence is that the base offense level was incorrectly calculated using the total quantity of drugs involved in Williams' portion of the conspiracy. Williams' contention that she is only responsible for the quantity which the government proved she personally handled is incorrect. As a member of the ongoing conspiracy, Williams is subject to a sentence calculated on a base offense level determined by reference to the actual quantity of drugs involved in the conspiracy provided that she knew or should have known that at least such amount was involved. *See, e.g., United States v. Warters*, 885 F.2d 1266, 1273 (5th Cir.1989); *United States v. Holland*, 884 F.2d 354, 358 (8th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989); *United States v. Guerrero*, 863 F.2d 245, 249 (2d Cir.1988). The sentencing judge specifically found that "Williams, at a minimum, had knowledge of the criminal enterprise and took no effective steps to bring it to an end.... [A]t a minimum, we have evidence of a conspiracy extending over nine years, years in which she had knowledge of it, and episodic but significant participation in it." R.Vol. V at 49–50. Williams does not contest the court's ensuing calculation, based on conservative estimates derived from the evidence, of the total quantity of heroin involved in the conspiracy which was known to Williams. Having already concluded that the court properly included the total quantity of drugs known to Williams, we affirm the court's determination of the base offense level.

## VI. CONCLUSION

Based on the foregoing, the conviction as well as the sentence imposed are AFFIRMED.