**UNITED STATES of America, Plaintiff,**

v.

**Albert FOSTER, Jr., Defendant.**

**No. CR–95–5–S.**

United States District Court, E.D. Oklahoma.

Aug. 15, 1995.

As Corrected Sept. 26, 1995.

Paul Hess, Assistant U.S. Attorney, Muskogee, OK, for plaintiff.

Donn Baker, Tahlequah, OK, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

SEAY, Chief Judge.

The defendant, Albert Foster, Jr., is charged in a twelve-count superseding indictment with various violations of Titles 18 and 21 of the United States Code related to controlled substances, firearms, false identification, sexual exploitation of minors, and transportation of a minor. Before the court for its consideration is Foster's amended motion to suppress. Foster contends that all evidence seized from his residence on December 16, 1994, should be suppressed because the underlying state court search warrant was not obtained in a timely manner and, in the alternative, the search conducted by law enforcement officials substantially exceeded the scope of the warrant. In response, the government argues that all items were seized pursuant to a valid search warrant and that evidence of criminal violations and contraband, in plain view, may properly be seized. The parties have fully briefed the issues and the court held a hearing on this matter on August 2, 1995. For the reasons stated below, the court finds that *all* evidence seized as a result of the December 16, 1994, search should be suppressed.

### I.

The essential facts are uncontroverted. On December 16, 1994, Sequoyah County Deputy Sheriff, Raymond Martin ("Martin"), submitted his affidavit for search warrant to search Foster's residence. In his affidavit, Martin stated that he and another deputy were told by an arrestee, Dallan Davis ("Davis"), that on November 24, 1994, Davis had traded several guns for one pound of marijuana to the person occupying Foster's residence.[1] Davis told Martin that while he was at the residence he saw marijuana growing in the kitchen and bedroom; that there were scales, clear plastic baggies, and larger quantities of marijuana in the residence; and that there were more than fifty guns in the residence. Davis also told Martin that four of the exchanged guns were stolen from a residence in Poteau, Oklahoma.

Based on the information contained in Martin's affidavit, a state authorized search warrant was issued by a judge of the District Court for Sequoyah County, Oklahoma, on December 16, 1994. The search warrant was issued based on the state court judge's determination that there was probable cause to believe that evidence of the commission of the crimes of knowingly concealing stolen property and possession of a controlled substance would be found at Foster's residence. The search warrant authorized the search of Foster's residence for the following items:

> Remington 12 Ga. shotgun serial # L072083, Taurus Model 85, 38 special Serial # NA44497, 22Ca. Ruger carbine # 120–99025 and a 22 Caliber Ruger Carbine W/green folding stock # 23820424, as well as CDS (Marijuana).

The search warrant further authorized the search of any automobiles and outbuildings on the property and for a search of "evidence of residency in which the stolen property is found."

On December 16, 1994, at approximately 3:25 p.m., Martin and seven other officers arrived at Foster's residence and began to execute the search warrant. Marijuana was found in the bedroom of the residence and in a barn which was located directly behind the residence. Firearms were found in the residence, mainly in the bedroom on the floor

---

1. In Martin's affidavit, Foster is not identified by name as the occupant of the residence. At the hearing, however, Martin testified that he was told by Davis that Foster occupied the residence.

near a wall. Other items, including ammunition and drug paraphernalia, were found throughout the residence and the barn. Sometime during the first hour of the search conducted by the state officers, Foster arrived at the residence with a woman identified as his stepdaughter and he was arrested on charges of cultivation of marijuana. Foster was transported to the county jail by Martin. After Foster had been transported, the state officers decided to contact the Drug Enforcement Agency ("DEA") for their assistance. A federal investigation and prosecution were authorized and DEA agents Robert Shannon ("Shannon"), Juan Beal ("Beal"), and Tim Jones ("Jones") arrived at Foster's residence at approximately 5:45 p.m. and they conducted their own search of the premises.

Before the arrival of the DEA agents, one of the state officers assisting in the execution of the search warrant, Ken Cowart ("Cowart"), Sequoyah County Deputy Sheriff, found numerous videotapes near two televisions and two VCR machines in the living room of the residence. Cowart noticed the word "Coke" on one of the videotapes which was in a black case next to the entertainment center. Believing it to be a reference to cocaine, Foster placed it in one of the VCR machines. Viewing the videotape, Cowart observed Foster and his stepdaughter lying on the couch in the living room of Foster's residence.[2] Cowart found and viewed approximately five other videotapes with either the word "Coke" or "Tab" on the labels. These videotapes contained footage of sexual acts involving Foster and his stepdaughter as well as footage of marijuana, including one scene involving three or four young looking females smoking marijuana on the couch in Foster's living room. Cowart informed another agent at the scene, Greg Wilson ("Wilson"), the District Attorney's Investigator, who informed the DEA agents of the contents of the videotapes upon their arrival. Without personally viewing any of the video-

tapes, Shannon seized all videotapes located in Foster's residence and took them to the DEA's office. A federal search warrant was obtained on December 19, 1994, and the DEA viewed the videotapes and observed numerous controlled substance and sexual exploitation violations involving Foster.

The search of Foster's residence on December 16, 1994, lasted until approximately 11:00 p.m. When the DEA agents left the residence they took with them thirty-five listed items including various firearms, ammunition, videotapes, marijuana, drug paraphernalia, and other miscellaneous items. The property that was seized by the DEA agents is listed on page three of the return filed by Martin.[3] As to the property seized by the state officers, pages one and two of the return list sixty items seized from Foster's residence. These items include VCR machines, a socket set a Pro Compound Bow by York, a green pair of coveralls, a riding lawn mower, a tiller, a stereo system, two soft tip microphones, televisions with remote controls, a Dewalt heavy duty drill, a Vivitar camera tripod, a Red Rider BB-gun Daisy Model, a Corona Machete in brown leather case, a ASAHI Pentex Spotmatic Camera, a Bowie type knife in black sheath, a Yashica camera MAT–124, a Westinghouse clock radio, five hunting knives, a screw driver set, three vehicles, and a small box containing old coins, knives, watch, and jewelry.

## II.

Initially, Foster attacks the legal sufficiency of the search warrant by arguing that Martin's affidavit in support of the warrant failed to establish probable cause because it was based on stale information. Foster claims the information contained in Martin's December 16, 1994, affidavit was not reliable because it consisted of events and observations occurring on November 24, 1994. Martin's affidavit recited Davis's November 24, 1994, exchange of guns for marijuana with Foster and his observation of marijuana and

---

**2.** At the suppression hearing, there was nothing presented to conclusively establish the age of the female alleged by the government to be Foster's stepdaughter. All the court has before it is defense counsel's questioning suggesting that she was twenty-five years old.

**3.** Shannon testified that two guns and miscellaneous videotapes were omitted from the return.

other guns at Foster's residence on that same date. Foster contends the three-week gap between November 24, 1994, and December 16, 1994, renders the information in Martin's affidavit stale and unreliable. The court disagrees.

■ Under the Fourth Amendment, probable cause to search cannot be based on stale information that no longer suggests the items sought will be found in the place to be searched. *United States v. Snow,* 919 F.2d 1458, 1459 (10th Cir.1990); *United States v. Shomo,* 786 F.2d 981, 983 (10th Cir.1986). "The determination of timeliness, however, does not depend on simply the number of days that have elapsed between the facts relied on and the issuance of the warrant; instead, whether the information is too stale to establish probable cause depends on 'the nature of the criminal activity, the length of the activity, and the nature of the property to be seized.'" *Snow,* 919 F.2d at 1460 (citing *Shomo,* 786 F.2d at 984). In the instant case, nothing suggests that a three-week gap in time would make the information provided by Davis stale or unreliable. The four guns which Davis exchanged for marijuana were likely to have been kept at the residence for some time. According to Davis, Foster stored numerous guns at his residence. There is no evidence in the record to suggest that the guns Davis exchanged would not be there for some time. Also, since Davis provided information about an ongoing marijuana growing and distribution operation, there is a substantial likelihood that the marijuana and guns would be present for some time in connection with such operation. *See United States v. Williams,* 897 F.2d 1034, 1039 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991) (information spanning a four-year period which linked defendant to drug distribution conspiracy was not stale as the court found that telephone, business, financial, and other records were likely to be present for some time); *Shomo,* 786 F.2d at 984 (ten-day gap between the time defendant was seen leaving his residence carrying a revolver and the issuance of the search warrant was not so long as to make the information in the affidavit stale). Consequently, under the totality of the circumstances the information provided by Davis concerning November 24, 1994, events and observations was not too stale to establish probable cause for the December 16, 1994, search warrant.

### III.

Foster also contends the seizure involved in this case was unreasonable due to the seizure of items not included within the terms of the search warrant. He argues the execution of the search warrant was expanded into an impermissible general search which requires the suppression of all evidence seized from his residence on December 16, 1994. The court agrees.

■ The Fourth Amendment provides protection against unreasonable searches and seizures. *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). In this case, the search was conducted by state and federal officials pursuant to a valid state search warrant. As a general rule, when a search is made pursuant to a warrant only those items specifically enumerated may be seized. *United States v. Tamura,* 694 F.2d 591, 595 (9th Cir.1982). However, exceptions to this general rule have been created. Under the "plain view" doctrine, items of "incriminatory nature" inadvertently discovered during the execution of an otherwise valid search are not subject to suppression. *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971); *Creamer v. Porter,* 754 F.2d 1311, 1318 (5th Cir.1985); *United States v. Ellison,* 793 F.2d 942, 948 (8th Cir.1986), *cert. denied,* 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986); *Tamura,* 694 F.2d at 595; *In re Petition of Becker,* 515 F.Supp. 1193, 1196 (D.Kan.1981). Also, officers may seize those items that have a "sufficient nexus to the crime being investigated" pursuant to a valid warrant. *Creamer,* 754 F.2d at 1318.

■ When items are seized which are not included within the terms of the warrant, the usual remedy is to suppress only those items which were outside the scope of the warrant. *United States v. Medlin,* 798 F.2d 407, 411 (10th Cir.1986), *app. after remand,* 842 F.2d 1194 (1988). However, "'flagrant disregard for the limitations of a search warrant might

make an otherwise valid search an impermissible general search and thus require suppression or return of all evidence seized during the search.' " *Medlin,* 798 F.2d at 411 (citing *Marvin v. United States,* 732 F.2d 669, 647–75 (8th Cir.1984)). In *Medlin,* the Court of Appeals for the Tenth Circuit provided the rationale for this "blanket exclusion" of all evidence seized during a search, including those items particularly described in the warrant:

> The basis of those decisions which hold that blanket exclusion is appropriate when a search warrant is executed with "flagrant disregard" for its terms is found in our traditional repugnance to "general searches" which were conducted in the colonies pursuant to writs of assistance. To protect against such invasive and arbitrary searches, the Fourth Amendment mandates that search warrants "particularly describ[e] the place to be searched and the persons or things to be seized." As the Supreme Court stated in *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 [ (1927) ]:

> > "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

> When law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.

*Medlin,* 842 F.2d at 1199.

In *Medlin,* the Tenth Circuit upheld the district court's suppression of all items seized during a search executed pursuant to a federal search warrant authorizing the seizure of illegally possessed or stolen firearms. The search was conducted by agents of the Bureau of Alcohol, Tobacco, and Firearms, as well as officers of the local sheriff's department. During the search, a deputy sheriff combed the premises for suspected stolen property which he believed to be evidence of state offenses. In addition to 130 firearms seized by the federal officers pursuant to the terms of the warrant, the deputy sheriff seized 667 items of purported stolen property. None of these additional 667 items were listed in the search warrant. The Tenth Circuit upheld the district court's conclusion that the deputy sheriff "employed the execution of the federal search warrant as a 'fishing expedition' " and that the search warrant was executed with flagrant disregard for its terms. *Id.* at 1199.

■ In the instant case, the court finds that the state officers similarly acted in flagrant disregard for the terms of the warrant. The specific terms of the warrant listed four firearms and marijuana as the items to be seized.[4] It is undisputed that items were taken from Foster's residence which did not fall within the terms of the warrant. While it is true that a limited number of items listed in the sheriff's return can be classified as contraband or other incriminating evidence inadvertently found during the execution of the warrant, it is abundantly clear from the testimony of Martin, as well as the testimony of Wilson and Cowart, that there was a wholesale seizure of Foster's property amounting to a fishing expedition for the discovery of incriminating evidence. In fact, upon cross-examination by defense counsel, Martin admitted that the officers "took anything of value" and that this was standard procedure in the execution of a Sequoyah

---

4. To the extent the government relies on the language of the warrant allowing for the seizure of "evidence of residency", the court finds, under the facts of this case, that this language violates the particularity requirement as it constitutes an impermissibly broad and generic category of property. "Evidence of residency" is an open-ended classification of evidence which offers no guidance to officers and places no restrictions on the type of evidence they can seize. Conceivably, *any* item could qualify as "evidence of residency". The list is only limited by the limitations of one's own imagination. As Martin's testimony revealed, the state officers interpreted this language in this case, as they have in the past, to provide them with carte blanche to rummage through all of one's belongings when conducting a search. Consequently, any attempt to justify the seizure of items based on the "evidence of residency" language of the warrant must fail.

County search warrant. Other than the readily observable firearms, marijuana, and assorted contraband (primarily listed on page three of the sheriff's return), no attempt was made to substantiate a connection between the seizure of the majority of the seized items and the terms of the warrant. As candidly admitted by Martin, the officers simply "took anything of value" and did not adhere to the specific terms of the warrant.

The officers' conduct in connection with the videotapes provides further support for the conclusion that a fishing expedition was under way. In the context of a search warrant authorizing a search for stolen firearms and *marijuana*, the court fails to see how references on the labels of various videotapes to "Coke" and "Tab" would support an inference that incriminating evidence is readily apparent so as to justify an immediate viewing of the tapes. The actions of Cowart and Wilson in viewing the videotapes is another example of the significant expansion of the scope of the warrant by officers indiscriminately attempting to uncover evidence of criminal activity.

Given the above-described conduct of the state officers, the court cannot imagine a more pronounced case of a search warrant execution conducted in flagrant disregard for its terms. Consequently, all items seized pursuant to the December 16, 1994, search of Foster's residence are ordered suppressed, including those items particularly named in the warrant. *Medlin*, 842 F.2d at 1194; *see also Voss v. Bergsgaard,* 774 F.2d 402, 406 (10th Cir.1985) (return of all evidence seized pursuant to warrants was proper under Rule 41(e) of the Federal Rules of Criminal Procedure where overly broad provisions of warrant subsumed those provisions which would have been adequate standing alone); *cf. United States v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 875–76 (10th Cir.1992) (seizure of items not covered by the search warrant was permissible where the seizure of the enumerated items combined with the executing officer's knowledge of the occupant's finances supported a finding of probable cause that the additional items were subject to forfeiture proceedings).[5]

---

**5.** Unlike the situation in *$149,442.43 in U.S. Currency,* there is nothing in the present record to support a finding that the items seized by the state officers were subject to forfeiture proceedings.

### IV.

■ Finally, although not directly raised by the government in its response brief, the court has considered whether the evidence seized by the DEA agents (page three of the sheriff's return) should not be suppressed because there were two independent searches conducted at Foster's residence on December 16, 1994—one by the Sequoyah County officers and one by the DEA agents. While the record does establish that the DEA agents conducted their own search of the premises some two hours after the state officers first conducted their search, the court does not believe there was more than one search for purposes of Fourth Amendment analysis. All officers, both state and federal, were on the premises pursuant to a single search warrant issued by a state court judge. The DEA agents had no independent authority to be on the premises. The record establishes that the DEA agents were contacted by the state officers in order to assist in an investigation initiated by state officers. In sum, the state officers and the DEA agents were aiding each other in their investigation conducted under the authority of a single search warrant. Under these circumstances, the court can only conclude that there was not more than one search of Foster's premises on December 16, 1994, and the government can not rely on the "good" portions of the search in order to justify the introduction of evidence seized by federal agents during the course of an otherwise constitutionally infirm execution of a warrant. *Medlin,* 842 F.2d at 1197 (there was only one search when state officer assisted federal officers in the execution of a federal search warrant even though there were two independent investigations being conducted at the same time).

Based on the foregoing reasons, Foster's motion to suppress is granted.

**IT IS SO ORDERED.**