UNITED STATES COURT OF APPEALS

**Filed 4/25/96**

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID WAYNE GRUBB,

    Defendant - Appellant.

No. 95-5103

(D.C. No. 94-CR-159-1-BU)

(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before SEYMOUR, Chief Judge, McKAY and LUCERO, Circuit Judges.

The parties have agreed that this case may be submitted for decision on the briefs. See Fed. R. App. P. 34(f), 10th Cir. R. 34.1.2. After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

This is an appeal from Defendant's conviction and sentencing for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On June 17, 1994, three deputy sheriffs with the Tulsa County Sheriff's Department executed an arrest warrant for Defendant David Wayne Grubb at the business of Transakool Transport Refrigeration (hereinafter "Transakool"), which served as the Defendant's residence. The arrest warrant was for the offense of assault and battery on a police officer. Deputies spoke with Lloyd Anderson, the owner of Transakool, and they explained they were looking to arrest Mr. Grubb. Mr. Anderson informed them that Mr. Grubb lived in a loft room on the second floor of the business. Deputy Derek Devoe testified that Mr. Anderson told them, "Well, I think he is at work. He drives our truck and it's not there, but I am not sure. He may be asleep." Appellee's Br. at 3. The deputies asked for and received permission from Mr. Anderson to go to the room, which was accessed by a stairway.

The officers proceeded up the stairs to the room and found the door to the room was closed. The deputies knocked and announced themselves; when no one answered, they opened the door and entered the room. The deputies turned on a light and observed a small attic-type room, measuring approximately 12 feet by 12 feet. In plain view from the doorway, the deputies saw a shotgun located between a couch and a wicker shelf. The firearm was a Noble 12-gauge pump, sawed-off shotgun with no serial number and a pistol grip. The shotgun was picked up and unloaded by Deputy Devoe for the officer's safety. The five shotgun shells from the gun were placed on the wicker shelf and a towel

2

was laid over them. The unloaded shotgun was returned to the location between the couch and the shelf. The deputies also noticed a black nylon bandolier full of shotgun shells sitting on the couch. Mr. Grubb was not present so the deputies left the business. Later on June 17th Mr. Grubb surrendered to the Tulsa County Sheriff's Office.

On July 21, 1994, the Bureau of Alcohol, Tobacco and Firearms submitted an affidavit to a magistrate judge requesting a warrant to search Defendant's residence for the shotgun. The affidavit included the following information: Tulsa County sheriff deputies observed on June 17, 1994, a shotgun in Mr. Grubb's room while executing a felony arrest warrant; Tulsa County Deputy Dan Fritz notified an ATF special agent on July 7, 1994, that they had seen the firearm in Mr. Grubb's room; the ATF verified on July 11, 1994, that Mr. Grubb was a convicted felon and had not had his rights restored for the purpose of possessing a firearm; the ATF examined Mr. Grubb's conviction records and fingerprint card on July 19, 1994; and the ATF determined on July 20, 1994, that there were no known manufacturers of 12-gauge pump shotguns in the state of Oklahoma.

The magistrate judge issued the search warrant for Mr. Grubb's room at the Transakool business on July 21, 1994. ATF agents executed the search warrant on July 25, 1994, and recovered the shotgun from between the couch and wicker shelf. Six

shotgun shells were removed from the firearm when it was recovered. The shotgun shells that had been placed on the wicker shelf by Deputy O'Keefe on June 17, 1994, were not found on the wicker shelf. The agents also seized ten rounds of 12-gauge ammunition in a black sling hanging on a wall in the room and a camouflage holster. The ATF found no fingerprints on the shotgun.

Defendant filed a motion to suppress the shotgun as evidence, which was denied by the district court. At trial, Mike McClary, a friend of Mr. Grubb, testified that he had purchased the shotgun in the spring of 1994. He stated that he took the shotgun on a fishing trip with Mr. Grubb in June 1994, and that he had left the shotgun unloaded at the Transakool office. Lloyd Anderson testified that Mr. Grubb had lived in the business and acted as a security guard from 1992 through 1994. He also stated that the shotgun appeared in the office area in the spring of 1994, but he did nothing with it. Robert Satterfield, a Transakool employee, testified that he observed the shotgun in the office behind a filing cabinet. He stated that he picked up the shotgun and placed it in Mr. Grubb's room because children played in the office. Mr. Satterfield stated that the shotgun was unloaded and that he did not inform Mr. Grubb that he had placed the shotgun in his room. Lloyd Anderson also testified that Transakool employees had access to the room. Kris Anderson, a Transakool employee and the son of Lloyd Anderson, testified that the Transakool employees occasionally used the room to watch television

4

when Mr. Grubb was not home.

Deputy Devoe testified at the trial that when he executed the arrest warrant on June 17, 1994, he saw the sawed-off shotgun in plain view between the couch and shelf from the door of the room. ATF Special Agent Peggy Tobin also testified at the trial that when she executed the search warrant on July 25, 1994, she saw the shotgun in plain view between the couch and shelf. The government also introduced into evidence photographs taken by Agent Tobin of the shotgun as it was found in the room.

Defendant was found guilty by a jury and sentenced to 235 months imprisonment and a five-year term of supervised release. On appeal, Defendant asserts the trial court erred in denying the motion to suppress and that the evidence was insufficient to prove Mr. Grubb possessed the firearm.

Defendant's first argument is that the shotgun should have been suppressed as evidence because the search warrant was based on stale information and the seizure of the firearm was the result of an illegal entry. The district court found that the information about the shotgun was not stale because the firearm was one that an individual would keep at his residence for more than a short period of time. The court also ruled that the sheriff's deputies had a right to enter the Defendant's room to execute the arrest warrant.

We review findings of fact for clear error and questions of law de novo in evaluating a ruling on a motion to suppress. United States v. Williamson, 1 F.3d 1134, 1135 (10th Cir. 1993). We construe facts in a light most favorable to the party who prevailed in the district court. Id.

A search warrant is issued upon probable cause to believe certain items will still be located at a certain place. Information used to support the issuance of a warrant does not have to provide for certainty that the sought objects will be found; rather, the facts and circumstances taken as a whole should provide probable cause to believe that the sought items will be found in the search. United States v. Brinklow, 560 F.2d 1003, 1006 (10th Cir. 1977), cert. denied, 434 U.S. 1047 (1978). The Supreme Court has stated:

> The task of the issuing magistrate [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983).

Probable cause for a search warrant "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." United States v. Snow, 919 F.2d 1458, 1459 (10th Cir. 1990). The staleness doctrine is premised on the understanding that probable cause dissipates with the passage of time. United

6

States v. Miles, 772 F.2d 613, 616 (10th Cir. 1985). Probable cause is not determined by merely counting the number of days from the facts relied upon and the issuance of a warrant, United States v. Reyes, 798 F.2d 380, 382 (10th Cir. 1986); rather, circumstances must exist from which it may be inferred that the grounds for the warrant will continue up to the time of the search. See United States v. Rahn, 511 F.2d 290, 292-93 (10th Cir.), cert. denied, 423 U.S. 825 (1975). The timeliness of the information depends on the nature of the criminal activity, the duration of the activity, and the nature of the items to be seized. United States v. Shomo, 786 F.2d 981, 984 (10th Cir. 1986). "Thus, where the property sought is likely to remain in one place for a long time, probable cause may be found even though there was a substantial delay between the occurrence of the event relied on and the issuance of the warrant." Id. (citations omitted).

In this case, the search warrant was issued on July 21, 1994. The search warrant affidavit was based in part on the June 17, 1994, observations of the Tulsa County Sheriff's Department. Defendant argues that the information was stale because more than a month had passed since the deputies had seen the weapon in the room and the shotgun was easy to move. Although a shotgun is readily mobile, it is an item which could reasonably be expected to be kept in a person's residence for an extended period of time. We have previously explained that it is reasonable and normal for "individuals to keep weapons in their homes, particularly hunting weapons and weapons which may be kept for the safety of the family." Shomo, 786 F.2d at 984. The information provided in the

7

ATF agent's affidavit as well as common sense supported the magistrate judge's finding that the shotgun would still be in the Defendant's residence; the district court was not clearly erroneous in denying Defendant's motion to suppress.

Defendant also argues that Transakool employees had open access to the room, and, therefore, the ATF had no reasonable expectation that the firearm would be located in the same place. This argument fails because at the time they applied for the warrant the ATF was unaware that Transakool employees had free access to Defendant's living quarters within the Transakool business. Also, the assertion that Messrs. McClary and Satterfield had handled the weapon was not disclosed until after the warrant had been issued.

Defendant's next argument is that the information used to obtain the warrant was tainted because it was the result of an illegal entry by the Tulsa County sheriff's deputies. An arrest warrant founded on probable cause implicitly carries with it the authority to enter a suspect's dwelling "when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980). In this case, the sheriff's deputies had reason to believe that the Defendant was within his room because Mr. Anderson informed Deputy Devoe that he was uncertain whether Mr. Grubb was in his room. He also told Deputy Devoe that Mr. Grubb "may be asleep." Thus, under Payton the deputies did not exceed

8

their authority under the arrest warrant by entering Defendant's room.

Defendant's final argument is that the evidence was insufficient to prove Mr. Grubb was in actual or constructive possession of the shotgun. Section 922(g)(1) requires that the government show the defendant knowingly possessed a firearm. United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). The government may show with circumstantial evidence that a defendant knowingly possessed a firearm. Id. We make a de novo review to determine whether sufficient evidence supports a conviction. United States v. Chavez-Palacios, 30 F.3d 1290, 1294 (10th Cir. 1994). We examine the evidence on appeal in a light most favorable to the prevailing party-- drawing all reasonable inferences and credibility choices in favor of the jury's conclusions. United States v. Massey, 687 F.2d 1348, 1354 (10th Cir. 1982).

Constructive possession is sufficient for a conviction under § 922(g)(1), and proof of actual possession is not required. See United States v. Cardenas, 864 F.2d 1528, 1533 (10th Cir.), cert. denied, 491 U.S. 909 (1989). Constructive possession is established under § 922(g)(1) by showing that the defendant "'knowingly holds the power to exercise dominion and control'" over the firearm. Id. (citation omitted). Dominion, control, and knowledge may be inferred by a defendant's exclusive possession of a premises, but "joint occupancy alone cannot sustain such an inference." Mills, 29 F.3d at 549. The

9

government asserts that Mr. Grubb had exclusive dominion and control over his room at the Transakool business. We conclude, however, that Defendant jointly occupied his room with the Transakool business. Defendant's residence/room was located within the Transakool business, and Lloyd Anderson, Chris Anderson, and Mr. Satterfield had access to and used the room in Mr. Grubb's absence.

Where the government seeks to prove constructive possession by circumstantial evidence in a joint occupancy case, it must show "'some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon.'" Mills, 29 F.3d at 550 (quoting United States v. Mergerson, 4 F.3d 337, 349 (5th Cir. 1993), cert. denied, 114 S. Ct. 1310 (1994)). As with the defendants in United States v. Sullivan, 919 F.2d 1403, 1431 (10th Cir. 1990), we can infer that Mr. Grubb was aware of the presence of the firearm in his room. It is reasonable to infer that Mr. Grubb had knowledge of and access to the shotgun because it was in plain view in his 12-foot by 12-foot room. Also in plain view was ammunition for the shotgun. It is logical and reasonable to infer that Mr. Grubb allowed the shotgun to remain in his room and that he brought ammunition for the shotgun into the room. The government connected Mr. Grubb to the shotgun by providing evidence that it was in plain view in his room. Thus, circumstantial evidence sufficiently supported the jury finding beyond a reasonable doubt that Mr. Grubb constructively possessed the firearm.

10

AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge