**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raul REYES, Defendant-Appellant.**

**No. 85–1540.**

United States Court of Appeals, Tenth Circuit.

July 29, 1986.

Presiliano A. Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on brief), Albuquerque, N.M., for plaintiff-appellee United States.

Ted W. Cassman (Penelope M. Cooper and Cristina C. Arguedas with him on brief), of Cooper & Arguedas, Berkeley, Cal., for defendant-appellant Raul Reyes.

Before BARRETT and McKAY, Circuit Judges, and THEIS,* District Judge.

THEIS, District Judge.

Raul Reyes appeals his conviction for conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. Reyes asserts the following grounds of error on appeal: (1) the search warrant affidavit lacked probable cause; (2) the execu-

---

\* Honorable Frank G. Theis, United States District Judge for the District of Kansas, sitting by desig- nation.

ting agents exceeded the scope of the search warrant; (3) certain handwritten notes and a cassette tape were erroneously admitted into evidence; and (4) the trial court improperly allowed a co-conspirator to testify at trial.

## I. THE SEARCH WARRANT AFFIDAVIT

Reyes moved to suppress an audio cassette tape seized from his residence during the execution of a search warrant on November 2, 1984. The trial court held a hearing on the matter and denied the suppression motion. The affidavit in support of the search warrant was prepared by a special agent who had an extensive background in drug trafficking investigations. The affidavit provided specific information about Reyes' participation in receipt of cocaine shipments and his role as a financial backer of certain drug transactions. In particular, the affidavit recited the contention of William Ayala, a government informant, that he had delivered fifteen kilograms of cocaine to Reyes over two occasions, in October of 1983 and January of 1984. Ayala also referred to Reyes' involvement in a drug transaction which had not been completed due to the seizure of a kilo and a half of cocaine at Las Cruces, New Mexico, on May 29, 1984. Furthermore, the affidavit mentioned the practice of various members of the conspiracy to maintain records of their associates.

Reyes argues that the search warrant affidavit was defective in two respects. First, he contends that the information contained in the warrant was stale, since five months elapsed between the Las Cruces seizure on May 29, 1984, and the issuance of the warrant on October 30, 1984. Second, Reyes claims that the affidavit did not refer to the conducting of any unlawful activities at Reyes' residence, the place to be searched.

■ An affidavit in support of a search warrant must provide a substantial basis for determining the existence of probable cause; that there is a fair probability that evidence of a crime will be found in the place to be searched. *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984). Timeliness is not determined by counting the number of days or months between the occurrence of the facts relied upon and the issuance of the warrant. *United States v. Brinklow,* 560 F.2d 1003, 1005 (10th Cir.1977). Instead, timeliness depends upon the nature of the underlying circumstances and concepts. *Id.; see also United States v. Johnson,* 461 F.2d 285 (10th Cir.1972). Moreover, "when the activity is of a protracted and continuous nature the passage of time diminishes in significance." *United States v. Sherman,* 576 F.2d 292, 296 (10th Cir. 1978). In this case the facts alleged in the affidavit pointed to an ongoing conspiracy. Under the totality of the circumstances, given the allegations of repeated drug offenses at several month intervals, the Court finds that the information upon which probable cause was based was not impermissibly stale.

■ Reyes complains that the information in the affidavit contained no specific link to his residence. The affidavit did indicate that participants in the conspiracy maintained records regarding their activities. It is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence. *Anthony v. United States,* 667 F.2d 870 (10th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982).

## II. THE SCOPE OF THE SEARCH WARRANT

■ Reyes contends that the agents executing the search warrant exceeded the scope of the warrant in seizing a cassette tape containing discussions concerning the sale and purchase of drugs. The search warrant authorized the seizure of "drug trafficking records, ledgers, or writings identifying cocaine customers, sources, [etc.]." (Tr. Vol. II, p. 45). The court below ruled that in modern times because

"business records are increasingly being kept on audio or video tape ... the law enforcement officers knew that the records that they were seeking might well be contained on [the] tape." (Tr. Vol. II, pp. 68–69).

The trial court correctly recognized that in the age of modern technology and commercial availability of various forms of items, the warrant could not be expected to describe with exactitude the precise form the records would take. *See, e.g., United States v. Thompson*, 495 F.2d 165 (D.C.Cir. 1974) ("records" of a narcotics business embraced items of a commercial character such as leases and account cards); *United States v. Auterbridge*, 375 F.Supp. 418 (S.D.N.Y.1974) ("records" included cancelled checks). Specifically with respect to cassette tapes, the Ninth Circuit has recognized that "[a] microcassette is by its very nature a device for recording information...." *United States v. Gomez-Soto*, 723 F.2d 649, 655 (9th Cir.), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). In this instance, the seizure of a specific item characteristic of a generic class of items defined in the warrant did not constitute an impermissible general search.

## III. ADMISSION OF EVIDENCE

Reyes argues that the trial court improperly admitted into evidence taped conversations between Reyes and his coconspirators and certain handwritten notes. Absent an abuse of discretion, a court of appeals is bound to uphold a trial court's rulings on evidentiary matters. *United States v. Cooper*, 733 F.2d 1360 (10th Cir.1984).

■ Reyes maintains that the notes were not written by him and were inadmissible as hearsay. The thrust of Reyes' argument is that the documents were not properly authenticated pursuant to the requirements of Rule 901 of the Federal Rules of Evidence. The handwritten notes admitted into evidence were neither signed nor dated. Further, Reyes suggests that a comparison of the handwriting in the notes to

his handwriting established that the notes were not authored by him.

Rule 901(b)(4) of the Federal Rules of Evidence permits authentication by means of "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." The contents of the notes included the name of the defendant and initials of his co-conspirators, notations of numbers of ounces, subtractions and additions of six-digit figures, and phone numbers. (Tr. Vol. V, pp. 423–438). The notes were seized from Reyes' residence. The source of the notes and the correspondence of information contained in the notes to members of the conspiracy provided ample foundation for their admissibility. Moreover, the contents of the notes indicated that they were written by someone involved in the conspiracy. *See United States v. Drougas*, 748 F.2d 8, 26 (1st Cir.1984); *United States v. DeGudino*, 722 F.2d 1351, 1356 (7th Cir.1983.) This Court finds no abuse of discretion in the admission of the names into evidence.

■ Reyes also complains of error in the admission into evidence of taped conversations between himself and other coconspirators. Reyes argues that the trial court should not have admitted the tape because no date was established for the conversations. Testimony concerning Reyes' girlfriend's birthdate and pregnancy indicated that the tape was prepared on June 30, 1983. (Tr. Vol. VI, pp. 750–53). Moreover, by the time the tape was played for the jury, the government had introduced significant evidence of the conspiracy. The conversations concerned the distributions of narcotics. The Court finds the tape was properly authenticated and admitted in evidence of the conspiracy. *See United States v. Brewer*, 630 F.2d 795, 800–01 (10th Cir.1980).

## IV. CO-CONSPIRATOR'S TESTIMONY

At trial the government informant William Ayala was permitted to testify to certain matters that co-conspirator Roberto Ramirez told him about Reyes' involvement

in the conspiracy. Reyes argues that the co-conspirator's testimony was improperly admitted under Rule 801(d)(2)(E) of the Federal Rules of Evidence and that the trial court failed to follow the order of proof required for admission of co-conspirator's testimony by *United States v. Peterson,* 611 F.2d 1313 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980).

Rule 801(d)(2)(E) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Reyes' contention is that the statements admitted were not made "in furtherance" of the conspiracy. According to Reyes, a statement can be "in furtherance" of a conspiracy only if it is both intended to promote the conspiracy and did in fact have the effect of promoting the conspiracy.

■ This Circuit has no talismanic formula for ascertaining when a conspirator's statements are "in furtherance" of the conspiracy. *See United States v. Davis,* 766 F.2d 1452, 1458 (10th Cir.1985); *United States v. Shepherd,* 739 F.2d 510, 514 (10th Cir.1984). Reyes suggests that other circuits appear to require that the statements actually "assist the conspirators in achieving their objectives." *See also, United States v. Layton,* 720 F.2d 548, 556 (9th Cir.1983), *cert. denied,* 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984); *United States v. DeLuna,* 763 F.2d 897, 909 (8th Cir.1985). The contexts in which this language is used, however, indicate the courts' attempts to distinguish admissions or narratives from statements intended in furtherance of the charged conspiracies. This Court rejects the defendant's proposition that the statements must *actually* further the conspiracy to be admissible. "Rule 801(d)(2)(E) explicitly says statements need be 'in furtherance of the conspiracy,' not that they 'further the conspiracy.' It is enough that they be intended to promote the conspiratorial objectives." *United States v. Hamilton,* 689 F.2d 1262, 1270 (6th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983). *See also United States v. Cambindo Valencia,* 609 F.2d 603, 632 (2nd Cir.1979).

■ Ayala testified that Ramirez had told him that Reyes was sponsoring the purchase and distribution of cocaine. Further, Ramirez had explained to Ayala that Reyes' role in the organization was that of an investor or financial backer. Since Ramirez' statements explained events important to the conspiracy to one of its members in order to facilitate the conspiracy, the Court finds that the statements were "in furtherance" of the conspiracy.

■ Finally, Reyes contends that the order of proof recommended in *United States v. Peterson* for the admission of hearsay statements of co-conspirators was not followed in this case. Reyes complains that his confrontation rights were violated since hearsay and nonhearsay testimony were intermingled and because the government had not established Reyes' participation in the conspiracy until after some of the hearsay had been admitted. In *United States v. Rivera,* 778 F.2d 591, 595 (10th Cir.1985), this Court recently commented on the order of proof in the admission of co-conspirator's hearsay testimony:

In *United States v. Peterson,* 611 F.2d at 1330, we stated that although we determined it was preferable, whenever possible, to require the Government to first introduce independent proof of the conspiracy and subsequently to establish the connection of the defendant with it before admitting hearsay declarations, there was an exception recognized where it was not reasonably practicable to require the showing to be made before admitting the evidence; in such a case the trial judge could admit the hearsay statements, subject to their being connected up later.

In this case, the trial judge was aware of the *Peterson* decision and the preferred method of proof. (Tr. Vol. VI, p. 628). The record indicates that the court admitted the statements conditionally, subject to their being connected up. (Tr. Vol. IV, p. 161). At the close of the government's

case, the judge found by a preponderance of the evidence that the United States had established with independent evidence the existence of the conspiracy and Reyes' participation in it. (Tr. Vol. VI, p. 627.) Under these circumstances, this Court finds that no reversible error was committed. *See United States v. Harenberg*, 732 F.2d 1507 (10th Cir.1984); *United States v. Calabrese*, 645 F.2d 1379 (10th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

No reversible error has been demonstrated. Accordingly, the conviction of the defendant is AFFIRMED.