930 F.2d 35
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
William LAWRENCE, Jr., Defendant-Appellant.
 No. 90-5011.
 United States Court of Appeals, Tenth Circuit.
 March 6, 1991.
 ORDER AND JUDGMENT[2]
 
 1
 Before McKAY and JOHN P. MOORE, Circuit Judges, and SAFFELS, District Judge.[1]
 
 
 2
 The parties have agreed that this case may be submitted for decision on the briefs. See Fed.R.App.P. 34(f); 10th Cir.R. 34.1.2. The case is therefore ordered submitted without oral argument.
 
 
 3
 The appellant, William Lawrence, Jr., appeals his conviction in the United States District Court for the Northern District of Oklahoma of possessing a firearm not registered with the National Firearm Registration and Transfer Record, see 26 U.S.C. Secs. 5861(d), 5845(a) (1988), and possession by a felon of four firearms having been transported in interstate commerce. See 18 U.S.C. Sec. 922(g)(1) (1988). Appellant challenges: (1) the admissibility at trial of evidence that was obtained during what he alleges was an invalid search; (2) the trial court's denial of appellant's motion to dismiss the indictment because of delay between the commission of the offense and the initiation of prosecution; and (3) the trial court's admission of testimony pursuant to Federal Rule of Evidence 404(b) that appellant possessed firearms on several other occasions.
 
 I.
 
 4
 On July 6, 1988, several officers from the Tulsa Police Department executed a search warrant at the residence of the appellant. The warrant sought the seizure of financial records that would allegedly reveal appellant's involvement in the trafficking of illegal drugs. During their search, the officers recovered four firearms from an armoire located in the master bedroom, including a sawed-off rifle with a fully-loaded clip laying beside it. The rifle's barrel length was five inches. It was not, however, registered to appellant in the National Firearms Registration and Transfer Record in Washington, D.C. See 26 U.S.C. Secs. 5861(d), 5845(a) (1988). The officers also recovered court documents and letters bearing appellant's name found in a briefcase in the master bedroom. In addition, bills, receipts and letters bearing appellant's name were found on the dresser.
 
 
 5
 Sometime during the investigation of the crimes, a special agent of the Bureau of Alcohol, Tobacco and Firearms spoke with appellant's cousin, William Humphrey. Mr. Humphrey also resided at the home that was the target of the officers' search. Appellant's cousin told the special agent that he, not appellant, purchased and owned the guns recovered by the officers. Mr. Humphrey further explained that appellant had removed four of the firearms recovered in the search from Mr. Humphrey's room and placed them in the master bedroom. Mr. Humphrey died from injuries suffered by a gunshot wound prior to appellant's indictment for the crimes presently on appeal.
 
 
 6
 At a pretrial proceeding, appellant moved to suppress the firearms seized during the search of his home. He challenged the affidavit submitted in support of probable cause. Appellant argued that the information contained in the affidavit was impermissibly stale. The affidavit focused on several events to establish probable cause for the subsequent search of appellant's home. Initially, the affidavit established that appellant, along with two other men, attempted to evade surveillance by security officers at the Tulsa International Airport on January 12, 1988. As soon as they noticed that they were being watched, the three men began running in different directions. Upon their apprehension, the security officers discovered that the men had stuffed money into their socks. The men collectively possessed $80,000. Money found on appellant accounted for $31,000 of the total. A drug-trained dog indicated that the money in the possession of the three men was tainted with the scent of drugs.
 
 
 7
 The second event recited in the affidavit occurred in December 1986. Appellant was arrested in Oklahoma City after narcotics officers recovered a large quantity of "crack" cocaine from the residence of one of the two men appellant was with during the January incident at the Tulsa airport. In addition, police officers seized a large quantity of crack on October 7, 1986, from a motel room registered in appellant's name.
 
 
 8
 The affidavit finally recited information given to the police by a confidential informant. On several occasions, according to the affidavit, the informant observed appellant in possession of several pounds of cocaine. Approximately six months prior to the date of the affidavit, the informant observed appellant "rocking up" several ounces of cocaine inside his residence. There is no statement in the affidavit, however, concerning the reliability of the informant.
 
 
 9
 After entertaining argument from the parties, the trial court noted that the affidavit was executed on June 2, 1988, approximately six months after the incident at the Tulsa airport. Due to the ongoing and protracted drug activity set forth in the affidavit, however, the district court concluded that the time lapse did not render the affidavit impermissibly stale. Appellant then filed a motion to reconsider, which the trial court denied.
 
 
 10
 At trial, Donna Marie Reed testified, over appellant's objection, that she had on several occasions witnessed firearms in appellant's actual or constructive possession. Her first account referenced an incident that occurred approximately five years prior to trial. Ms. Reed had at that time borrowed a pickup truck owned by appellant. The witness testified that she found a hand gun underneath the driver's seat in the truck. Within that same time frame, Ms. Reed stated, she on several occasions saw appellant with a hand gun protruding from the top of his pants. Finally, the witness testified that she saw a firearm on a table in appellant's home after his indictment and approximately five or six months prior to her testimony.
 
 II.
 
 11
 Appellant initially challenges the trial court's failure to suppress the evidence obtained from his residence. He finds fault with the affidavit in support of the search warrant. He raises here his argument at the district court that the staleness doctrine renders the affidavit insufficient to sustain a finding of probable cause. In addition, he contends that because the only nexus between drug activity and the residence searched was from a confidential informant whose reliability was never established, the affidavit was insufficient to establish probable cause.
 
 
 12
 A magistrate judge's finding of probable cause is given great deference. Illinois v. Gates, 462 U.S. 213, 236 (1983). When reviewing a district court's denial of a motion to suppress evidence, we accept the trial court's findings of fact unless clearly erroneous. United States v. Alonso, 790 F.2d 1489, 1496 (10th Cir.1986).
 
 
 13
 This court analyzed a similar claim of staleness in United States v. Reyes, 798 F.2d 380 (10th Cir.1986). There, five months had elapsed since the most recent information contained in the affidavit--a seizure of cocaine. Because the facts as alleged in the affidavit pointed to an ongoing conspiracy, however, the court in Reyes concluded that the information was not stale. The court stated:
 
 
 14
 Timeliness is not determined by counting the number of days or months between the occurrence of the facts relied upon and the issuance of the warrant. United States v. Brinklow, 560 F.2d 1003, 1005 (10th Cir.1977). Instead, timeliness depends upon the nature of the underlying circumstances and concepts. Id.; see also United States v. Johnson, 461 F.2d 285 (10th Cir.1972). Moreover, "when the activity is of a protracted and continuous nature the passage of time diminishes in significance." United States v. Sherman, 576 F.2d 292, 296 (10th Cir.1978).
 
 
 15
 Reyes, 798 F.2d at 382.
 
 
 16
 The district court relied heavily on the analysis in Reyes to determine that the ongoing and continuous nature of the activity here precluded the information contained in the affidavit from being impermissibly stale. We conclude that the evidence revealed in the search warrant, when viewed in the light most favorable to the government, supports the state court's finding of probable cause. We do not find clearly erroneous the district court's conclusion that the several events referred to in the affidavit demonstrated ongoing criminal activity. See United States v. Williams, 897 F.2d 1034, 1039 (10th Cir.1990); United States v. Shomo, 786 F.2d 981, 984 (10th Cir.1986).
 
 
 17
 Appellant next contends that the only information indicating illegal activity at the residence searched was supplied by a confidential informant. Appellant notes that the informant's reliability or trustworthiness was not established in the affidavit. His argument, therefore, is with the lack of any corroboration pointing to probable cause to search the residence.
 
 
 18
 We look to the totality of the circumstances to determine whether the state court erred in determining probable cause for the search. Illinois v. Gates, 462 U.S. 213 (1983). To demonstrate probable cause, an affidavit must set forth facts sufficient to convince a reasonably prudent person that a search will uncover evidence of a crime. Id. at 231. We do not find that the trial court's reliance on the information provided by the confidential informant was an abuse of discretion. The affidavit, which set forth independent evidence demonstrating appellant's ongoing involvement in drug-related activities, provided a substantial basis for the state court's conclusion that probable cause existed.
 
 III.
 
 19
 Appellant next contends that the district court erred when it failed to dismiss the indictment against him due to preaccusatory delay. Appellant notes an eleven-month time span between the search of appellant's residence and his subsequent indictment. He complains that during that time his cousin, who had previously admitted to owning the firearms recovered in the search, had been killed. Appellant argues that the prejudice he suffered by his inability to call Mr. Humphrey at trial resulted in his denial of due process.
 
 
 20
 In United States v. Marion, 404 U.S. 307 (1971), the Supreme Court acknowledged that the Due Process Clause may play a limited role in protecting against excessive delay prior to the indictment of the accused. The due process inquiry must include clear proof of prejudice and must consider the reasons for the delay and the degree of prejudice. United States v. Lovasco, 431 U.S. 783 (1977). Nevertheless, courts "are to determine only whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.' " Id. at 790 (citations omitted).
 
 
 21
 We do not believe that the circumstances of this case demonstrate a violation of fundamental principles of due process. Mr. Humphrey's untimely death could not have been anticipated by the government. If there is any prejudice to appellant, it is not due to an intentional delay in appellant's indictment to gain a tactical advantage.
 
 IV.
 
 22
 Appellant finally argues that the testimony of Donna Marie Reed was improperly admitted under Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) is a rule of inclusion which allows the admission of "similar act" evidence if probative of an issue at trial, unless undue prejudice is shown.[3] United States v. Turner, 799 F.2d 627, 630 (10th Cir.1986). The decision to admit evidence under Rule 404(b) rests within the discretion of the trial court. Absent a clear showing of abuse of discretion, the court's decision will not be disturbed. United States v. Record, 873 F.2d 1363, 1373 (10th Cir.1989).
 
 
 23
 Prior to trial, the government proffered the proposed testimony of Ms. Reed to demonstrate the knowledge and intent of appellant to possess the weapons. The evidence would therefore answer, according to the government, a denial by appellant of any knowledge of the existence of the guns in his bedroom in order to establish appellant's knowledge and intention to control them. Appellant nevertheless complained at trial and argues here that the district court should not have admitted the testimony under Rule 404(b) because of its remoteness in time. Ms. Reed testified at trial that she had seen appellant in actual or constructive possession of firearms on three occasions, once approximately six months prior to her testimony and twice approximately five years before trial.
 
 
 24
 We do not find in the circumstances of this case an abuse of discretion by the trial court in admitting Ms. Reed's testimony under Rule 404(b). " '[T]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case.' " United States v. Franklin, 704 F.2d 1183, 1189 (10th Cir.), cert. denied, 464 U.S. 845 (1983) (quoting United States v. Engleman, 648 F.2d 473, 479 (8th Cir.1981). Here, appellant's prior possession of firearms was probative of his intent to possess the firearms found in the master bedroom of his residence.
 
 
 25
 Nor do we find that the probative value of the evidence is outweighed by its potential prejudice. See Fed.R.Evid. 403. Any prejudice to appellant was minimized when the court gave a contemporaneous instruction on the limited use of 404(b) evidence at the conclusion of the witness' testimony and in the court's final charge. See United States v. Bridwell, 583 F.2d 1135, 1140 (10th Cir.1978).
 
 
 26
 Appellant also submits that the admission of 404(b) evidence absent proof of the act beyond a reasonable doubt violates the Due Process Clause of the United States Constitution. In Huddleston v. United States, 485 U.S. 681 (1988), however, the Supreme Court recently rejected the notion that the court should make a preliminary determination of similar act evidence even by a preponderance of the evidence. We similarly reject the argument of appellant here. The evidentiary standard of Rule 404(b) is unrelated to the government's proof on the substantive issues. Cf. Bourjaily v. United States, 483 U.S. 171, 176 (1987).
 
 V.
 
 27
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 Honorable Dale E. Saffels, United States Senior District Judge for the District of Kansas, sitting by designation
 
 
 [2]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [3]
 Fed.R.Evid. 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.