

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-2007

# USA v. Weaver

Precedential or Non-Precedential: Precedential

Docket No. 04-3888

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Weaver" (2007). *2007 Decisions.* Paper 161.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/161

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-3888

UNITED STATES OF AMERICA,
Appellant

v.

DELORES WEAVER

Appeal from United State District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00320-1)
District Judge: Honorable John P. Fullam

Argued: January 16, 2007

Before: McKEE, AMBRO, and STAPLETON, *Circuit Judges*

(Filed: November 7, 2007)

Patrick L. Meehan
Anthony J. Wzorek, Argued
United States Attorney Office
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106
*Attorney for Appellant*

Thomas A. Bergstrom, Argued
138 Davis Road
Malvern, Pa. 19355
*Attorney for Appellee*

OPINION

McKEE, *Circuit Judge*

The government appeals the district court's grant of Delores Weaver's motion *in limine.* The order precluded the government from introducing a recorded telephone conversation in its case-in-chief. For the following reasons, we will vacate the order and remand.[1]

## I. Factual Background and Procedural History[2]

---

[1]The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 3731. Our review of the district court's interpretation of the Rules of Evidence is plenary. We review the court's findings of fact for clear error. *United States v. Cruz*, 910 F.2d 1072, 1081 (3d Cir. 1990).

[2]A detailed overview of the underlying conspiracy is described in detail in Judge Ambro's related opinion in *United States v. Ali*, No. 05-2098. **[cite will be added].** Accordingly, rather than again detailing that background here, we will refer only to those facts that pertain to issues Weaver is raising.

The government's allegations include averments that Faridah Ali, the assistant director of the Sister Clara Mohammed School (the "School"), and Delores Weaver, the director of the Adult Basic Education ("ABE") program at the Community College of Philadelphia ("CCP"), devised a scheme to defraud CCP out of rental payments to the School by representing that they were providing ABE classes that were never taught and then splitting payments CCP sent to compensate the School for those nonexistent classes. To help establish Weaver's involvement in the scheme, the government wanted to introduce a conversation between Faridah Ali and her sister, Zaynah Rasool, that occurred on September 4, 2001 (the "September 4 conversation").

During the September 4 conversation, Ali and Rasool discussed various administrative matters at the School, commented on some of the School's faculty, and talked about the School's arrangement with CCP. Ali also made the following comments about Sayeeda Quaye, a teacher at the

3

School: "[S]he got paid for all summer from [CCP]." This statement prompted Rasool to respond: "[S]he ain't did nothing." Ali continued: "[A]lways people gonna be backbiting us as much as we do for them."

The conversation then turned to Weaver. Ali complained as follows that Weaver had not put her on CCP's payroll: "Delores is . . . just like you said, she does not want me . . . to have more than her. And now that I bought this big car, I'm gonna have to pay for it." The discussion continued:

Ali: [Weaver]'s being a B and I'm so sick of her. I'll be so glad when I won't need her no more. Gonna be asking for half of what the school get. You know what I'm saying?

Rasool: Yeah. It's . . . petty and rotten and illegal.

Ali: Yeah.

Rasool: Cause she's already gettin' other stuff. Uh, so I mean come on now it ain't no sense in just going overboard.

Ali: Right. But I just don't want to do anything right now with Sayeeda and them and jeopardize what we got with the college, you know. Cause you know they be the one's to be calling and saying they ain't nobody here at this time go check the, you know what, I know they'd do that.

App. 134-37.

Weaver filed a motion to exclude the entire September 4 conversation from trial on the grounds that she was not a party

4

to it and Rasool was not a member of the conspiracy. The court granted the motion without holding a hearing based on the strength of the briefs and its review of a transcript of the September 4 conversation. The court did not accept either of the grounds for exclusion asserted by Weaver.

Rather, the court reasoned that the September 4 conversation was inadmissible because the statements made therein "cannot be regarded as having been made in furtherance of the alleged conspiracy . . . ."[3] App. 2. The court also concluded that it was difficult to extrapolate any "statement of fact" from the conversation because "the statements seem to constitute derogatory opinions having no conceivable value." *Id.* at 2-3. Accordingly, the court ruled that the statements were not admissible under Federal Rule of Evidence 801(d)(2)(E). The court then granted the government's motion to stay

---

[3]Rule 801(d)(2)(E) provides: "A statement is not hearsay if— . . . the statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).

Weaver's trial pending appeal.  This appeal followed.

## II. Discussion

A. *Rule 801(d)(2)(E)'s "in furtherance" Requirement*

The government argues that the district court erred in ruling that the September 4 conversation was inadmissible hearsay.  The government contends that the statements are excepted by the hearsay rule under Rule 801(d)(2)(E).[4]  In order for an out-of-court statement to meet the co-conspirator exception:

> the district court must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy.

*United States v. Ellis*, 156 F.3d 493, 496 (3d Cir. 1998); *United States v. Vega*, 285 F.3d 256, 264 (3d Cir. 2002).  Other than

---

[4]"Technically, the federal rules exclude admissions from the definition of hearsay rather than treating them as exceptions to the rule against hearsay." *United States v. Gibbs*, 739 F.2d 838, 843 n.10 (3d Cir. 1984) As in *Gibbs*, "[f]or simplicity, we will refer to the 'co-conspirator exception.'" *Id.*

6

finding that the September 4 conversation was not in furtherance of the conspiracy, the district court failed to make any findings in respect to the other foundational requirements of Rule 801(d)(2)(E).

However, Weaver concedes that the district court implicitly found "the existence of a conspiracy, that Ali and Weaver were members of the conspiracy, and that the [September 4 conversation took place] during the course of the conspiracy," Appellee's Br. 8 n.5, and she does not contest these implied findings.[5]  Rather, she argues only that the September 4 conversation is inadmissible because it was not in furtherance of the conspiracy and because the statements are irrelevant, just as the district court concluded.  We disagree.

Our analysis is guided by several of our prior decisions addressing this issue.  In *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983), four members of a nine-person conspiracy,

[5]We will therefore consider these issues waived, and will not address them.

7

Ghassan Ammar, Judith Ammar, Marshall Stillman, and Roger McFayden, were tried and convicted on several charges stemming from their conspiracy to import and distribute heroin. Two of the indicted co-conspirators, Charles Rossi and Michael Dugan, pleaded guilty and testified for the government. The two unindicted co-conspirators, John Welkie and Gilber Bunner, also testified against the defendants at trial. The other three indicted co-conspirators, Ibraham Ammar, Abedeen Ammar, and Naim Dahabi, were fugitives when the trial began. *Id.* at 243. All of the conspirators who went to trial were convicted.

On appeal, Judith and Stillman challenged the admission of certain out-of-court statements made by their co-conspirators on the grounds that the statements were not in furtherance of the conspiracy because they merely "constituted narratives of past events . . . ." *Id.* at 252. Specifically, Judith challenged the admissibility of Ghassan's statements to Welkie and Rossi that when he and Judith returned from a trip to Beirut, Lebanon to purchase heroin they were checked at customs, but their heroin

8

had not been discovered. Stillman challenged the admissibility of Ibraham's statements to Ghassan, Judith, and Welkie that "Stillman owed them a lot of money for the last shipment of heroin and would have to pay up before he could get another package." *Id.*

We rejected the defendants' argument that the foregoing statements were not admissible under Rule 801(d0(2)(E) because they were not made in furtherance of the conspiracy. We explained:

> Statements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met. Such statements are more than 'mere narratives' of past events.

*Id.* at 252. (citations omitted).

We distinguished the admissible out-of-court statements at issue there from the inadmissible out-of-court statements at issue in *United States v. Provenzano*, 620 F.2d 985 (3d Cir. 1980). We explained that the statements in *Provenzano* "had

9

been made to non-members of the conspiracy who had no need to know about the matters disclosed." *Ammar*, 714 F.2d at 252. *Provenzano* concerned the admissibility of out-of-court statements of the defendants' co-conspirator (and the government's chief witness), Ralph Picardo, about the defendants' involvement in a labor-kickback scheme. Specifically, the defendants argued that statements Picardo had made to his girlfriends, Paulette Compton and Mary Ann Hart, and one of his employees, Alan Abromowitz, concerning (1) the defendants' roles in the scheme, (2) the legitimacy of a corporation central to the scheme, (3) how two other corporations central to the scheme were capitalized and financed, (4) Picardo's high regard for one of the defendants, and (5) the fact that Picardo traveled to Florida on one of the defendant's orders, were inadmissible under Rule 801(d)(2)(E) because those statements were not in furtherance of the conspiracy.

However, we concluded that Picardo's statements to

10

Compton, who had been in charge of one of the businesses at the center of the scheme while Picardo was in jail, were admissible under Rule 801(d)(2)(E) because "[i]f [she] were to run the business, she had to know the details, and therefore, Picardo's telling her the sordid details was in furtherance of the conspiracy." *Id.* at 1001. Picardo's statements to Hart and Abramowitz were not admissible under the co-conspirator exception. "Only if there was a reason for [them] to know these things about the conspiracy could the statements have been in furtherance of the conspiracy." *Id*. We further reasoned that the statements made to Hart and Abramowitz were not in furtherance of the conspiracy because they were "Picardo's errand runners. The district court made no findings, and the Government has pointed to no evidence indicating anything Picardo told them could have furthered the conspiracy." *Id.*

In *United States v. Gibbs*, 739 F.2d 838 (3d Cir. 1984), we rejected the defendant's contention that the trial court erred in admitting out-of-court statements against him because the

11

statements "were mere narratives of past fact and not made to induce conduct that would further the goals of the conspiracy . . . ." *Id.* at 845. The statements at issue in *Gibbs* involved conversations between Joseph Quintiliano, Charles Bilella, and David White that implicated Stephen Gibbs (also known as "Jake") in a conspiracy to import and distribute marijuana. White and Bilella both testified that Quintiliano told them that he planned to sell the marijuana to a previous customer named "Jake," that "Jake" was getting impatient about receiving the drugs, and that Quintiliano had invited "Jake" to visit him to review plans to import the drugs.

White also testified that he met Gibbs in Philadelphia the day after Quintiliano told him about "Jake's" visit. Gibbs had introduced himself as "Jake," and Gibbs matched the description Quintiliano had given him of "Jake." White further testified that Quintiliano told him that "Jake" wanted to buy the marijuana that was being imported, but needed time to raise the money. Finally, White testified that Quintiliano asked him if he could

12

store the marijuana in his shop until "Jake" could raise the funds to purchase the drugs. *Id*. at 841-42.

In rejecting Gibbs's contention that the foregoing statements were not in furtherance of the conspiracy, we first observed that "[t]he in furtherance requirement is usually given a broad interpretation." *Id*. at 845. We also acknowledged that "statements made to those who are not involved in the conspiracy are not in furtherance of it just as casual conversation between co-conspirators that is not intended to induce continued involvement, or other actions that would not advance the conspiracy, are not in furtherance of a conspiracy." *Id*. (citation omitted). However, we reasoned that this did not apply in *Gibbs* because "[a]s participants in the scheme, it was important for White and Bilella to be kept abreast of developments to induce their continued participation and allay any fear they might have had." *Id*. at 846. We also distinguished the statements that had been at issue in *Gibbs*, from those in *Provenzano*. We reasoned that, unlike in *Provenzano*—where "the statements were made

13

to persons not part of the conspiracy who had no reason to know about the matters disclosed to them"—all of the statements in *Gibbs* "were made to co-conspirators." *Id.*

Weaver attempts to distinguish *Ammar* and *Gibbs* by stressing that they involve drug conspiracies, which "by their nature and culture are different; many of the conversations are coded or veiled in some way, making it difficult to ascertain the purpose or intent of the statements." Appellee's Br. at 8. Although we agree that drug-conspiracy cases may differ from the fraudulent financial scheme alleged as the object of this conspiracy, the legal principles applicable to evidentiary disputes are the same. Moreover, none of the statements that we ruled admissible in *Ammar* and *Gibbs* were "coded or veiled."

In *Ammar*, the statement Judith challenged was made by her husband to another member of the conspiracy recounting how he and his wife outsmarted customs agents to smuggle drugs into the country. The statement Stillman challenged was made by one co-conspirator to other co-conspirators and

14

informed them that Stillman was delinquent on payments for drugs he had received and that he was not to be sold any more drugs until he cleared his debt. The statements were uncoded and could be understood by someone with no expertise in the drug trade.

In *Gibbs*, Quintiliano's statements to White identified Gibbs as "Jake," kept him current on "Jake's" desire and ability to purchase the marijuana, and arranged to store the marijuana for sale. There is similarly nothing "coded or veiled" about those conversations. .

Ironically, Weaver directs our attention to another drug case, *United States v. Reyes*, 798 F.2d 380 (10th Cir. 1986), in arguing that "although there is no 'talismanic formula' for determining the 'in furtherance of' requirement, the statement, at a minimum[,] should advance the object of the conspiracy" to be admissible under Rule 801(d)(2)(E). Appellee's Br. 8. However, her reliance on *Reyes* is unavailing. There, a government informant, William Ayala, was permitted to testify

15

that Raul Reyes's co-conspirator, Roberto Ramirez, told him that Reyes was paying for, and distributing drugs. *Reyes*, 798 F.2d at 384.

Reyes appealed his conviction for conspiring to possess and distribute drugs, in part, on the ground that Ramirez's statement to Ayala did not satisfy Rule 801(d)(2)(E)'s "in furtherance" requirement because the government had not established that Ramirez's statement "both intended to promote the conspiracy and did in fact have the effect of promoting the conspiracy." *Id*. The court of appeals rejected that argument, expressly noting that it "reject[ed] the defendant's proposition that the statements must *actually* further the conspiracy to be admissible." 798 F.2d at 384 (emphasis in original). The court reasoned that "Rule 801(d)(2)(E) . . . says statements need be 'in furtherance of the conspiracy,' not that they 'further the conspiracy.' It is enough that they be *intended* to promote the conspiratorial objectives." *Id*. (emphasis added). The court ultimately concluded that Ramirez's statement to Ayala was in

16

furtherance of the drug conspiracy "[s]ince Ramirez' statements explained events important to the conspiracy to one of its members in order to facilitate the conspiracy . . . ." *Id.*

We understand Weaver to be arguing that Ali's statements did not *actually* facilitate the conspiracy, and therefore should not be admitted under *Reyes*. As an initial matter, we note that we are not bound by *Reyes*. Moreover, insofar as *Reyes* holds that "it is enough" for purposes of Rule 801(d)(2)(E)'s "in furtherance" requirement that statements "be intended to promote the conspiratorial objectives," we agree. However, as *Ammar* makes clear, the "in furtherance" requirement of Rule 801(d)(2)(E) can be satisfied when the declarant merely informs a co-conspirator of the status of the conspiracy.

B. *Statements Informing about the Status of the Conspiracy*

During an important part of the September 4 conversation, Ali told Rasool: "[Weaver's] being a B and I'm so sick of her. I'll be so glad when I won't need her no more.

17

Gonna be asking for half of what the school get. You know what I'm saying?" We believe the district court's analysis of the September 4 conversation, and the court's conclusion that it was inadmissible hearsay that was little more than idle gossip comprised of "derogatory opinions having no conceivable probative value," was unduly influenced by the fact that Ali referred to Weaver as a "B." App. 2-3. However, there is clearly more to the conversation.

If Ali had only stated that "[Weaver's] being a B and I'm so sick of her," we would agree with the district court. But Ali went on to say: "I'll be so glad when I won't need her no more." This statement informs Rasool that Ali was dependent on Weaver for the success of the fraudulent scheme, and Ali is lamenting that dependence. Ali also said about Weaver: "Gonna be asking for half of what the school get." This statement informs Rasool that Weaver is requesting a 50% "kickback" from the rent payments CCP allegedly made to the School.

Since Weaver was the director of the ABE program at

18

CCP, it makes sense that Ali would have been dependent on her to make sure that CCP did not discover that the School was a sham site and that CCP continued to make rental payments to the School. Ali was therefore informing Rasool of the "current status of the conspiracy" when she expressed dissatisfaction with her dependence on Weaver and explained Weaver's request for half of the School's payments.

A declarant's statement explaining the current status of the conspiracy is "in furtherance" of that conspiracy only if the addressee is also a co-conspirator. *See Ammar*, 714 F.2d at 252 ("Statements *between conspirators* which . . . inform each other of the current status of the conspiracy further the ends of the conspiracy . . . .") (emphasis added); *see also Gibbs*, 739 F.2d at 846 ("*As participants in the scheme*, it was important for [the addressees] to be kept abreast of developments to induce their continued participation [in the conspiracy].") (emphasis added). The government argues that Rasool was a co-conspirator. As noted earlier, the district court failed to conduct an evidentiary

hearing on Weaver's motion *in limine*. However, we think it clear that, if the government can prove Rasool's involvement in the conspiracy by a preponderance of the evidence, the portion of the September 4 conversation where Ali apprised Rasool of the status of the conspiracy would be admissible because it would then be "in furtherance" of the charged conspiracy.

### C. *Statements Concealing the Conspiracy*

In *United States v. Pecora*, 798 F.2d 614 (3d Cir. 1986), defendants challenged the admission of a recorded telephone conversation among several unindicted co-conspirators. Their challenge included the argument that the conversations were not in furtherance of the no-show scheme at issue there. *Id.* at 630. The conversations consisted of statements "trying to get their stories straight about what their jobs entailed in anticipation of a government investigation." *Id.* at 625. Defendants argued that the conversations were inadmissible because their purpose was "to conceal the declarants' participation in the conspiracy at a time when the declarants were no longer conspirators, having

20

terminated their involvement."  *Id.* at 630.

We rejected that argument explaining:

"[i]f the acts of concealment amount to nothing more than (1) a criminal conspiracy which is carried out in secrecy; (2) a continuation of the secrecy after the accomplishment of the crime; and (3) desperate attempts to cover up after the crime begins to come to light then declarations made during an agreement to conceal are indeed not made in furtherance of the conspiracy.

*Id.* (citation and quotation omitted).  However, we recognized in

*Pecora* that the Supreme Court has cautioned:

"[b]y no means does this mean that acts of concealment can never have significance in furthering a criminal conspiracy.  But a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime."

*Pecora*, 798 F.2d at 630 (quoting *Grunewald v. United States*,

353 U.S. 391, 405 (1957)).  We concluded that the recorded

conversations in *Pecora* were admissible against the defendants

because "concealment of the existence of the conspiracy enabled

the defendants to continue their illegal payoff scheme for two

21

more years . . .".  *Pecora*, 798 F.2d at 631.

As quoted earlier, here Ali told Rasool:

I just don't want to do anything right now with Sayeeda and them and jeopardize what we got with the college, you know.  Cause you know they be the one's to be calling and saying they ain't nobody there at this time go check the, you know what, I know they'd do that.

App. 134-37.  Thus, Ali is cautioning Rasool not to upset a teacher at the School ("Sayeeda") because that teacher might tell CCP ("the college") that there are no ABE classes being taught at the School ("ain't nobody there at this time").  Ali is obviously concerned that if they upset or anger Sayeeda in any way, Sayeeda might report the fact that the School is empty when ABE classes should have been in session, thus revealing the "no show" scheme.  Since it is clear that the purpose behind these statements was to conceal that scheme so that it could continue, we conclude that they were made in furtherance of it.

Moreover, our conclusion that Ali's statements to conceal the conspiracy were in furtherance of it is not undermined by the fact that the district court failed to hold an evidentiary hearing

22

on Weaver's motion *in limine*.  Even if Rasool was not a member of the conspiracy, Ali's efforts to conceal the scheme were clearly *intended* to further it.  *See Reyes*, 798 F.2d at 384.

As we have explained, statements made to inform others of the status of a conspiracy only further the conspiracy if the addressees are also interested in the status of the conspiracy. *See Ammar*, F.2d at 252; *see also Gibbs*, 739 F.2d at 846. Conversely, statements made for the purpose of concealing a conspiracy can further the conspiracy regardless of whether the addressee is a co-conspirator.  Although jurors may not interpret this statement as an effort to concealment, the government has at least satisfied the "in furtherance" requirement of Rule 801(d)(2)(E) and is therefore entitled to have the jury consider this portion of the September 4 conversation.

Thus, Weaver's attempt to define the September 4 conversation as merely being Ali's "complaints" about Weaver is not persuasive.  Appellee's Br. at 9.  Weaver attempts to buttress this argument by relying on the reasoning in *United*

23

*States v. Licausi*, 167 F.3d 36 (1st Cir. 1999). *Licausi* involved a conspiracy to rob several supermarkets and convenience stores. One of the defendants, John Licausi, argued on appeal that the district court had erred in admitting out-of-court statements of one of his co-conspirators, Bernie Subocz, to a female acquaintance, Lori Munroe, because they were not in furtherance of the conspiracy. *Id.* at 50.

Subocz had returned from a crime spree in Ohio when he told Monroe about several robberies he and his crew had attempted that had been botched for various reasons. The court agreed with Licausi that the statements were inadmissible because "[a]ll but one were made after the crimes they described took place, and they do not appear to have yielded significant enough information to constitute reports to a coconspirator, assuming Munroe could be considered as such." *Id.* The court also concluded that the statements "appear[ed] . . . to be instances where Subocz was "merely blowing off steam or venting anxiety" or simply avoiding an argument with his

24

girlfriend.

Here, even if we were to concede that some of Ali's statements during the September 4 conversation can be fairly characterized as "merely blowing off steam or venting anxiety," the bulk of her statements are qualitatively different than those in *Licausi.* All but one of the statements in *Licausi* were made after the crimes were committed, and were obviously not intended to conceal prospective criminal activity. Accordingly, the statements were not in furtherance of a conspiracy. *See id.*

Conversely, as we have explained, Ali's statement to Rasool concerned the need to proceed with caution in order to prevent revelation of the scheme that would result from the discovery of empty classrooms and require an explanation of how the proceeds were being used.

D. *Admissibility of Rasool's Statements*

The government appears primarily interested in admitting Ali's statements during the September 4 conversation. However, if the government intends to introduce Rasool's

25

statements against Weaver under the co-conspirator exception, it must establish by a preponderance of the evidence that Rasool was also a conspirator. As we have noted, the government never had a chance to establish Rasool's membership in the conspiracy. Of course, in addition to establishing Rasool's role in the conspiracy, the government must also satisfy the other requirements of Rule 801(d)(2)(E). *See Ellis*, 156 F.3d at 496.

E. *Relevance of the September 4 Conversation*

The district court also ruled the September 4 conversation irrelevant. Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Here, Ali's statements to Rasool during the September 4 conversation confirm essential elements of the conspiratorial scheme. Specifically, Ali informed Rasool that she was dependent on Weaver for the scheme to continue and that Weaver requested

26

half of the School's proceeds from the scheme. Ali also instructed Rasool not to upset Sayeeda and thereby jeopardize the scheme, as we have just explained.

It is, of course, ultimately for the jury to interpret those statements.. However, they are certainly relevant to the charges against Weaver because Ali's statements to Rasool tend to make it more probable than not that Weaver knew about the scheme to defraud CCP and was involved in it. Accordingly, the district court erred in finding the September 4 conversation irrelevant.

In conclusion, we will remand for the district court to provide the government with the opportunity to present evidence in support of its allegation that Rasool was a co-conspirator. We recognize that "the control of the order of proof at trial [for admission of statements under Rule 801(d)(2)(E)] is a matter committed to the discretion of the trial judge," *Ammar*, 714 F.2d at 246, and leave it to the court to decide whether to: (1) conduct a pretrial evidentiary hearing on Weaver's motion *in limine*; or (2) conditionally admit the challenged conversation "subject to

27

the requirement that the government make [its Rule 801(d)(2)(E)] showing by the close of its case," *id.* at 247. *See id*. (noting that the latter procedure should be "carefully considered and sparingly utilized") (quoting *United States v. Continental Group, Inc.*, 603 F.2d 444, 457 (3d Cir. 1979)). After hearing the relevant evidence, whether at a pretrial hearing or during the trial, the district court will then be able to determine whether the government has proven by a preponderance of the evidence that the portion of Ali's statements to Rasool informing her of the status of the conspiracy are admissible under Rule 801(d)(2)(E).

If the evidence shows that Rasool was, as the government claims, a co-conspirator in the charged conspiracy, that portion of the conversation would be admissible under Rule 801(d)(2)(E). If, on the other hand, the evidence shows that Rasool had no involvement in the charged conspiracy, the district court should grant Weaver's motion with respect to that portion of the conversation only. However, regardless of the

28

district court's findings in respect to Rasool's involvement in the conspiracy, Ali's statements to Rasool regarding Sayeeda and concealing the conspiracy are admissible under Rule 801(d)(2)(E).

## III.

For the reasons stated above, we will vacate the district court's order granting Weaver's motion *in limine* and remand for further proceedings consistent with this opinion.