

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2008

# USA v. Abate

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3513

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Abate" (2008). 2008 Decisions. Paper 125.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/125

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3513

UNITED STATES OF AMERICA

v.

FRANK G. ABATE,
                                        Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 06-cr-00919)
District Judge:  The Honorable Susan D. Wigenton

Submitted Under Third Circuit LAR 34.1(a)
November 20, 2008

Before:  BARRY, CHAGARES, Circuit Judges, and RESTANI,[*] Judge

(Opinion Filed: December 11, 2008)

OPINION

_____

[*]  Honorable Jane A. Restani, Chief Judge, United States Court of International Trade,
sitting by designation.

BARRY, <u>Circuit Judge</u>

Appellant Frank G. Abate was convicted of five counts of mail fraud and one count of obstruction of justice.[1] On appeal, he challenges those convictions and the sentence that was imposed. We will affirm.

**I.**

Given that we write solely for the parties, a brief recitation of the facts will suffice. From 2002 to 2006, Abate served as Executive Director of the Western Monmouth Utilities Authority ("WMUA"), the entity responsible for the sewer systems of Marlboro and Manalapan, New Jersey. The counts of conviction revolve around a kickback scheme involving Abate and two developers, as well as Abate's attempt to cover up that scheme by manufacturing a fraudulent paper trail. Distilled to its essence, Abate assisted the developers in obtaining WMUA approval for various real estate development plans in exchange for free architectural services used to build an addition to his home.

The jury convicted Abate of five counts of honest services mail fraud and one count of obstruction of justice. The District Court sentenced him to 51 months' imprisonment, at the high end of the applicable Guidelines range.

**II.**

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise

---

[1] Abate was acquitted on nine counts: six counts of mail fraud, two counts of extortion under color of official right, and one count of obstruction of justice.

plenary review over a district court's interpretation of the Federal Rules of Evidence; factual findings are reviewed for clear error. *United States v. Weaver*, 507 F.3d 178, 180 n.1 (3d Cir. 2007). In addition, "[w]e review the District Court's ruling on any contemporaneous objections for abuse of discretion . . . Any non-contemporaneous objections are subject to plain error review." *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). When evaluating jury instructions, we exercise plenary review over the question of whether the instruction stated the proper legal standard, but abuse of discretion review when considering the instruction's particular language. *United States v. Khorozian*, 333 F.3d 498, 508-09 (3d Cir. 2003). The reasonableness of a sentence is reviewed for abuse of discretion. *See United States v. Sevilla*, 541 F.3d 226, 230 (3d Cir. 2008).

## III.

Abate's allegations of error at trial include an evidentiary ruling and various aspects of the government's summation.

## A.

Abate argues that the District Court improperly admitted into evidence an audio recording of a conversation between the developers and the architect who performed the architectural services that were allegedly the subject of the bribery. The recording, made without the developers' knowledge, arguably demonstrates the developers' consciousness of guilt and attempt to conceal the scheme. Abate asserts that the recording does not

qualify under Federal Rule of Evidence 801(d)(2)(E), and is not relevant.

Rule 801(d)(2)(E) provides that a statement of a coconspirator is not hearsay, and thus generally admissible, when made "during the course and in furtherance of the conspiracy." There are four requirements for a statement to qualify under this Rule:

(1) that a conspiracy existed;
(2) the declarant and the party against whom the statement is offered were members of the conspiracy;
(3) the statement was made in the course of the conspiracy; and
(4) the statement was made in furtherance of the conspiracy.

*United States v. McGlory*, 968 F.2d 309, 333 (3d Cir. 1992).

Statements made after a conspiracy has ended do not qualify under the Rule, even if made with the intent to cover up the conspiracy. *See, e.g.*, *United States v. Pecora*, 798 F.2d 614, 629 (3d Cir. 1986). Here, however, the conspiracy was ongoing at the time of the recording. The evidence at trial indicates that Abate and the developers were engaged in a continual scheme to grease the wheels of the WMUA. That scheme was still active at the time of the recording,[2] and the recording was thus "in furtherance of the main criminal objectives of the conspiracy," *Grunewald v. United States*, 353 U.S. 391, 405 (1957), "serv[ing] not only to cover up the declarant's past participation in criminal behavior, but to shield the ongoing conspiracy as well," *Pecora*, 798 F.2d at 630.

---

[2] For example, a major aspect of the scheme involved helping the developers acquire access to WMUA sewer systems at reduced cost for a development project known as Brown Stone Commons or Marlboro Grand. At the time of the recording, that access had not yet been acquired; while an agreement to cap the developers' costs had been reached, the ultimate goal of the conspiracy had not been achieved.

The recording was also relevant.  While it was direct evidence only of the developers' state of mind, it was also evidence from which the jury could infer the existence of a kickback scheme.  Such circumstantial evidence is entirely appropriate.[3]

**B.**

Abate challenges several aspects of the government's summation.  First, he argues that the government impermissibly commented on his decision not to testify.  In summation, the government played an audio recording of a phone conversation in which the architect tells Abate that the developers paid for the architectural plans.  Abate responds by saying that he will "take that up with [the developers]."  (App. Volume 1 at 109.)  After playing this portion of the conversation, the government stated: "No testimony relating to the defendant taking anything up with the [developers]."  (*Id.* at Volume 5, Ex. 3 at 87.)  According to Abate, this constituted improper commentary on his silence because he was the only witness who could have provided such testimony.

We disagree.  "A remark [by a prosecutor] is directed to a defendant's silence when the language used was manifestly intended or was of such a character that the jury

---

[3]  *United States v. Trala*, 386 F.3d 536 (3d Cir. 2004), does not require a different result.  In *Trala*, we found that statements of the defendant's girlfriend were not relevant to show defendant's guilt.  *Id.* at 546.  But *Trala* is distinguishable from the instant case in light of the different crimes in the two cases.  Here, the developers' statements were relevant because they allowed the jury to infer the existence of a *dishonest scheme*.  In a prosecution for honest services mail fraud, such a scheme is unquestionably relevant.  On the other hand, the girlfriend's statements in *Trala* had no particular relevance to *armed bank robbery*.  In short, the developers' statements were circumstantial evidence that a scheme existed to defraud the public of Abate's honest services.

would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Brennan*, 326 F.3d at 187 (internal citations and quotations omitted). The government's off-hand comment did not imply anything about Abate's decision not to testify, and there is no reason to suspect that the jury thought it did.

Moreover, other witnesses could have testified about discussions that Abate had with the developers. For example, Abate's attorney testified in support of his advice of counsel defense, *see infra*, and presumably could have provided information on this issue. And, we note, documentary evidence in the case supported the conclusion that Abate had taken the issue up with the developers. (*See* App. Volume 1 at 111 (letter from Abate to one of the developers).) Thus, while the comment may have been an incorrect summary of the evidence, it did not infringe on Abate's rights. *See Brennan*, 326 F.3d at 187 ("Statements regarding the absence of facts in the record . . . need not be taken as comment on [a] defendant's failure to testify.") (alterations in original) (internal citations and quotations omitted).

Abate next challenges the following statement made in the government's summation: "Well, you don't need to go to a lawyer to say, 'pay your bills,' do you? But you do if you're trying to cover your tracks. You do if you're trying to make it appear that there's nothing going on, that there's nothing wrong with what you're doing." (App. Volume 5, Ex. 3 at 88-89.) According to Abate, this statement burdened his right to counsel. *See United States ex rel. Macon v. Yeager*, 476 F.2d 613 (3d Cir. 1973).

The government should not ordinarily comment on a defendant's decision to consult with counsel. *Id.* at 615-16 (noting the danger of imposing a penalty on a defendant's valid exercise of constitutional rights). Here, however, Abate himself placed in issue his decision to consult with counsel: he requested and received an instruction about the validity of relying, in good faith, on the advice of counsel. (*See* App. Volume 5, Ex. 3 at 33-34.) The government's statement was clearly responsive to this defense:

> *Don't be fooled by this advice of counsel defense.* Don't be fooled by the fact that he contacted a real estate/commercial lawyer to ask his advice relating to what should I do now? He never told, as [his] lawyer testified, again, this is their lawyer, he didn't tell him that he knew, he, being the defendant, that the [developers] paid for this bill. He didn't say: You know what, there's a federal grand jury investigation out there looking into my activities. Should I cut a check? He said innocently: I was looking at my files and I, you know, I noticed that I didn't pay this architect. What should I do? Well, you don't need to go to a lawyer to say, 'pay you bills,' do you? But you do if you're trying to cover your tracks. You do if you're trying to make it appear that there's nothing going on, that there's nothing wrong with what you're doing.

(*Id.* at 88-89 (emphasis added).)

In the context of Abate's defense, this statement was proper. *See Brennan*, 326 F.3d at 186 (reading the government's summation in context, and finding no violation).

## IV.

Abate also challenges his sentence of 51 months' imprisonment. First, he disputes the District Court's application of a two-level enhancement pursuant to U.S.S.G. § 2C1.1(b)(1). Section 2C1.1(b)(1) applies when the underlying crime involved "more than one bribe." Abate contends that the evidence does not support a finding of a *quid pro*

*quo*, an alleged prerequisite for bribery.  This argument has no merit.

At trial, WMUA Commissioner Eric Abraham testified to benefits that Abate provided and could have provided to the developers.  The District Court credited this testimony in concluding that bribery occurred.  Abate has offered no reason to second-guess that decision.  While there may have been no evidence of "explicit extortion," there was substantial circumstantial evidence indicating a *quid pro quo*.[4]  (App. Volume 5,  Ex. 3 at 59.)

Abate next asserts that his sentence was unreasonable under 18 U.S.C. § 3553 because the District Court did not adequately consider whether he was entitled to a variance in light of the sentences in other public corruption cases in the District of New Jersey.  Section 3553 mandates that the sentencing judge take into account "the need to avoid unwarranted sentence disparities" in fashioning an appropriate sentence.  18 U.S.C. § 3553(a)(6).  Although the Court never explicitly mentioned that it had taken this factor into account, the Court did state that it had "reviewed the presentence report, the sentencing memorandum of the defendant, as well as the government['s memorandum]." (App. Volume 5, Ex. 4 at 19.)  And, of course, having presided at the trial, the Court had an in-depth understanding of Abate's conduct.

---

[4]  Abate points to *Valdes v. United States*, 475 F.3d 1319 (D.C. Cir. 2007).  *Valdes* distinguished illegal gratuities from bribery by noting that the latter requires that a payment "actually influence the act or omission" whereas a gratuity simply requires that the payment be "for or because of" the act.  *Id*. at 1327.  The evidence here could support either conclusion, and the District Court was justified in applying the enhancement.

Moreover, we do not require a sentencing judge to "discuss every argument made by a litigant if an argument is clearly without merit." *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006). The District Court was entirely justified in dismissing the weak uniformity argument, raised by Abate only in passing at the sentencing hearing, without discussion. We find no error.[5]

## V.

We will affirm the judgment of the District Court.

---

[5] Abate also contends that various other errors were committed at trial, including: the government's alleged vouching for the evidence in summation, the false exculpatory statement jury instruction, the persons not on trial jury instruction, and the application of the high-level official enhancement pursuant to U.S.S.G. § 2C1.1(b)(3). We have carefully reviewed the extensive record and the applicable law, and find that these contentions are without merit.